UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID CHAVEZ, on behalf of himself and all others similarly situated,

Plaintiff,

v.

STELLAR MANAGEMENT GROUP VII, LLC; STELLAR MANAGEMENT GROUP, INC. d/b/a QSI QUALITY SERVICE INTEGRITY; THE VINCIT COMPANY, LLC d/b/a THE VINVIT GROUP and VINCIT ENTERPRISES,

Defendants.

Case No. 19-cv-01353-JCS

**ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND GRANTING JURISDICTIONAL DISCOVERY**
Re: Dkt. No. 18

## I.   INTRODUCTION

In this putative class and collective action, Plaintiff David Chavez alleges that Defendants Stellar Management Group VII, LLC ("Group VII"); Stellar Management Group, Inc. d/b/a QSI Quality Service Integrity ("Stellar, Inc."); and The Vincit Company, LLC d/b/a The Vincit Group and Vincit Enterprises ("Vincit") violated the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and California wage and hour laws.  Group VII does not contest the jurisdiction of this Court.  *See generally* Group VII Answer (dkt. 17).  The other two Defendants, Stellar, Inc. and Vincit, move to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), asserting that they do not have sufficient minimum contacts with California. Chavez argues that Stellar, Inc. and Vincit are subject to the jurisdiction of this Court because they solicit potential employees through online job postings, hire them, and then oversee their employment in California.  In the alternative, Chavez seeks jurisdictional discovery to further explore the role of Stellar, Inc. and Vincit in managing Group VII and their involvement in

recruiting and hiring employees in California. The Court held a hearing on June 28, 2019.

The present record falls short of definitively establishing personal jurisdiction over Stellar, Inc. and Vincit. For the reasons stated below, however, Stellar, Inc. and Vincit's Motion is DENIED without prejudice, and Chavez's request for jurisdictional discovery is GRANTED.[1]

## II. BACKGROUND

### A. Allegations of the Complaint

Chavez is a resident of California who allegedly applied for and accepted a job as a sanitation worker for Defendants in August 2018 at the Foster Farms plant in Livingston, California.[2] *See* Compl. (dkt. 1) ¶¶ 11–12, 26. He seeks to represent a class of individuals who have worked for the Defendants as "non-exempt, hourly employees, including but not limited to Sanitation Workers." *Id.* ¶ 1. Chavez claims that Defendants violated wage and hour laws by: (1) failing to permit employees to take meal and rest breaks; (2) failing to provide premium pay for these missed breaks; (3) failing to compensate for all hours worked; (4) failing to pay overtime; (5) failing to provide accurate, itemized wage statements; and (6) failing to timely pay employees upon resignation or termination. *Id.* ¶ 2. Chavez believes that Vincit "serves in a capacity of direct control over the operation of its agents," which include Stellar, Inc. and Group VII. *Id.* ¶ 19. According to Chavez, Defendants "jointly exercised control over [Chavez] and [the] putative Class and Collective members with respect to work assignments." *Id.* Chavez further alleges that Defendants recruit employees for sanitation jobs in California under the employer names of "The Vincit Group" and "QSI," otherwise known as Stellar, Inc. *Id.* Chavez believes that Defendants are "either solely or jointly and severally liable" for the improper conduct. *Id.* ¶ 20.

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).
[2] Livingston is located in Merced County, in the Eastern District of California. Although it is not clear why Chavez chose to bring his claim in this Court rather than in the Eastern District, *see* Compl. ¶ 23 (asserting without explanation that venue is proper because a "substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district"), Defendants have waived any objection to venue by failing to raise it in their responsive motion (in the case of Stellar, Inc. and Vincit) or answer (in the case of Group VII). *See* Fed. R. Civ. P. 12(h).

2

**B. The Parties' Arguments and Evidence**

    **1. Stellar, Inc. and Vincit's Motion and Declarations of Morrie Casura and Tammy Way**

Stellar, Inc. and Vincit argue they are not subject to personal jurisdiction by this court, relying primarily on declarations by the Division Manager of Stellar, Inc., Morrie Casura, and the Director of Global Sourcing of Vincit, Tammy Way. Mot. (dkt. 18) at 5; *see generally* Casura Decl. (dkt. 18-1); Way Decl. (dkt. 18-2). According to the declarations, both Stellar, Inc. and Vincit are incorporated and have their principal place of business in Chattanooga, Tennessee. Mot. at 5; Casura Decl. ¶¶ 3−4; Way Decl. ¶¶ 3−4. For the four years preceding this action, each company reportedly "has not employed non-exempt sanitation workers or other hourly employees within California" and "has not conducted operations or business within California." Casura Decl. ¶¶ 6−7; Way Decl. ¶¶ 6−7; *see also* Mot. at 5. Furthermore, Way declares Vincit "does not control Stellar, Inc. or Group VII" and it is not "a member or manager of Group VII." Way Decl. ¶¶ 5, 7; *see also* Mot. at 5. Casura similarly states, "Group VII and Vincit are not owned by Stellar, Inc., nor is Stellar, Inc. a member or manager of either LLC." Casura Decl. ¶ 5; *see also* Mot. at 5.

Stellar, Inc. and Vincit assert that their overall contacts with California are not sufficient to establish general personal jurisdiction, as their activities within the forum state are not so "continuous and systematic" to consider them "at home" in California. Mot. at 6. Both companies are incorporated in Tennessee with their principle places of business in Tennessee, and "neither company does business, has offices, nor conducts operations within California's boarders." *Id.* at 7. Stellar, Inc. and Vincit state that they are not subject to specific personal jurisdiction as they have not purposefully directed their activities to California or availed themselves of the privilege of conducting business within California. *Id.* at 8. They also contend that Chavez's "vaguely pled" claims do not arise out of conduct engaged in by Stellar, Inc. or Vincit. *See id.* at 4, 8–9. Stellar, Inc. and Vincit insist Chavez's claims "originate solely from conduct beginning after employees are hired and begin working in California," a state where neither conducts business. *Id.* at 9. They also argue that Chavez's reference to the job postings

3

1  and Vincit listing Stellar, Inc. as one of its "member companies" is unrelated to the claims as "this
2  action does not allege unlawful advertising, placement, or hiring practices." *Id.*

### 2. Chavez's Opposition, Declarations, and Request for Jurisdictional Discovery

Contrary to the declarations from Stellar, Inc. and Vincit stating they do not have minimum contacts in California, Chavez argues that they "jointly solicit California residents as non-exempt employees" and then "direct[] them to work in California and pay[] them wages in California." Opp'n (dkt. 20) at 1. Chavez relies on a website branded with Vincit's name and logo, a job posting attributed to the companies on Indeed.com, and an itemized wage statement he received after his employment to illustrate Stellar, Inc.'s and Vincit's contacts with California. *See id.* at 2−4. According to Chavez, Vincit's website "advertises job positions for sanitation workers with Vincit and [Stellar, Inc.] throughout California, and allows prospective employees to apply directly on its website for these positions in California." *Id.* at 3 (citing Edelstein Decl. (dkt. 20-2) Ex. 1). Chavez also points to an Indeed.com job posting where "'The Vincit Group/ QSI' posted a job for 'Sanitation Team Member' in Petaluma, CA." *Id.* (citing Edelstein Decl. Ex. 2). Additionally, after Chavez completed his employment, he "received an itemized wage statement provided by 'Stellar Management Group'" that was "mailed to his home in California." *Id.* at 4 (citing Chavez Decl. (dkt. 20-1) Ex. A). He claims Stellar, Inc. was the sender, although he does not address how he determined that the statement was not sent by the similarly-named Stellar Management Group VII. *See id.* Chavez believes the above instances demonstrate purposeful direction of activities towards California by Stellar, Inc. and Vincit.

Chavez also alleges that Stellar, Inc. and Vincit's control over Group VII and his employment creates minimum contacts. *Id.* at 8. Chavez alleges that Defendants are related and "jointly exercise control . . . with respect to work assignments" and that "Vincit oversees and directs" the business of Stellar, Inc. and Group VII within California. *Id.* at 2, 8. To establish this connection Chavez primarily relies on statements from the Vincit job posting and the addresses of the Defendants' principal places of business. *Id.* at 4. Vincit's website states Stellar, Inc. is part of its "network of eight member companies" and Chavez believes Group VII "appears to be an entity directly related to" and that "provides sanitation services on behalf of" both Stellar, Inc. and

4

Vincit. *Id.* at 2 (citing Edelstein Decl. Ex. 3). Chavez also cites the sending address on his itemized wage statement, noting that it is the same address as the principal places of business for all Defendants. *Id.* at 4 (citing Chavez Decl. Ex. A); Casura Decl. ¶ 4; Way Decl. ¶ 4. Chavez argues that these contacts show purposeful availment by Stellar, Inc. and Vincit of the privileges of conducting business in California.

Chavez further states that the above actions demonstrating contacts with California also show that his claims arise out of Stellar, Inc.'s and Vincit's forum-related activities. Opp'n at 9. He contends that these contacts contradict the declarations offered by Stellar, Inc. and Vincit, which claim the companies have little to no involvement in California. *See id.* at 8. According to Chavez, such contradictions should be resolved in his favor at the pleading stage and entitle him to at least jurisdictional discovery, if not denial of the motion. *Id.* at 5, 10–11.

### 3. Stellar, Inc. and Vincit's Reply in Support of Dismissal

Stellar, Inc. and Vincit argue in their reply that Chavez "offers no competent evidence to show that either Defendant has purposefully availed itself within or directed activities towards this California forum." Reply (dkt. 24) at 1. Stellar, Inc. and Vincit dismiss the exhibits attached to the opposition as "three unauthenticated internet print-outs," two of which consist of job postings accessed months after Chavez was employed. *Id.* at 3. They state Chavez does not assert that "he utilized any of these job postings or webpages, nor that they are even related in any way to his alleged employment." *Id.* at 4. Stellar, Inc. and Vincit contend that Chavez "fails to set forth any facts sufficient to support a finding that he has personal knowledge as to the entity to which he 'applied to, was offered, and accepted' employment," such as his application and hiring documents, and that he fails to explain why he thinks the wage statement came from Stellar, Inc. and not Group VII. *Id.* at 4–5. Stellar, Inc. and Vincit assert Chavez only "thinks" that he applied for a job advertised by them, that he was hired by Stellar, Inc., and that he received a wage statement from Stellar, Inc. *See id.* at 4–6. They state this is not enough to establish purposeful direction or purposeful availment. *Id*. Furthermore, even if Stellar, Inc. and Vincit did receive Chavez's application, hire him, or send him the wage statement, they argue that he "has failed to offer any facts or evidence that show [they were] likely to know [Chavez] would suffer numerous

5

1	Labor Code violations because of this." *Id.* at 6.

2	Stellar, Inc. and Vincit once again state that Chavez's claims do not arise out of their alleged contacts with the forum state because "simply maintaining an 'interactive website'" is insufficient to create personal jurisdiction and Chavez has not alleged the postings had anything to do with his specific employment. *Id.* at 8. Stellar, Inc. and Vincit argue that Chavez has not shown that "but for" their conduct, his injury would not have occurred. *Id.* As such, they contend Chavez has failed "to meet his burden in establishing a prima facie showing of specific jurisdiction." *Id.* at 7.

With respect to jurisdictional discovery, Stellar, Inc. and Vincit maintain that Chavez's "last-minute request" is based on a mere "hunch," and that the Court should deny his request. *Id.* at 10–11. According to Stellar, Inc. and Vincit, Chavez has failed to explain "what limited discovery requests he would issue, on what basis these claims relate to his burden of establishing personal jurisdiction, [or] on what basis (other than a hunch) he justifies his request." *Id.* Stellar, Inc. and Vincit argue that Chavez's request for jurisdictional discovery is "entirely overbroad in that it is not limited to potential contacts connected to his own claims." *Id.*

### III. ANALYSIS

#### A. Legal Standard for Rule 12(b)(2) and Jurisdictional Discovery

A party may move for dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. The plaintiff bears the burden of establishing personal jurisdiction over the defendant. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Id.* (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, . . . uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotation marks omitted). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.*

Alternatively, where "the jurisdictional facts are contested or more facts are needed," a

6

court may permit jurisdictional discovery. *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). Courts may, however, dismiss without allowing jurisdictional discovery "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Am. W. Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989). A plaintiff must generally demonstrate "more than a hunch that [discovery] might yield jurisdictionally relevant facts." *See Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).

Personal jurisdiction depends on both substantive law and constitutional due process considerations. "Where . . . there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002). As the FLSA is silent as to personal jurisdiction, the Court applies the law of California to determine whether personal jurisdiction exists. *See Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir. 1992). "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Dole Food*, 303 F.3d at 1110 (citing Cal. Civ. Proc. Code § 410.10).

### B. Overview of Personal Jurisdiction

"For a court to exercise personal jurisdiction over a non-resident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 1110−11 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder v. Jones*, 465 U.S. 781, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

Personal jurisdiction may be either general or specific. *See Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). In *Goodyear*, the Supreme Court explained that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."

7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe*, 326 U.S. at 317). On the other hand, "[s]pecific jurisdiction . . . depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (alteration in original; citation omitted). Thus, "[i]n contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (citation and internal quotation marks omitted).

### C. This Court Lacks General Jurisdiction Over Stellar, Inc. and Vincit

In *International Shoe*, the Supreme Court observed that there are "instances in which . . . continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945). The standard for establishing general jurisdiction is "fairly high." *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986). "It is one thing to hold a corporation answerable for operations in the forum State, quite another to expose it to suit on claims having no connection whatever to the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014) (citation omitted).

A corporate defendant may be subject to general jurisdiction when its contacts with the forum "approximate physical presence." *Bancroft & Masters*, 223 F.3d at 1086. Whether this standard is met turns on the "economic reality of the defendants' activities rather than a mechanical checklist." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1173 (9th Cir. 2006). "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Bancroft & Masters*, 223 F.3d at 1086. "[E]ngaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders." *Id.*

In recent years, the Supreme Court has cautioned against an overly expansive view of general jurisdiction, framing the question as whether the defendant corporation is "essentially at home" in the forum state. *See Goodyear*, 564 U.S. at 919; *Daimler*, 571 U.S. at 138 (quoting

8

*Goodyear*). As summarized by the Ninth Circuit:

> The Court in *Daimler* rejected the plaintiffs' argument, also pressed by plaintiffs here, that general jurisdiction is appropriate whenever a corporation "engages in a substantial, continuous, and systematic course of business" in a state. [*Daimler*, 571 U.S.] at 761 (internal quotation marks omitted). It emphasized that the "paradigm" fora for general jurisdiction are a corporation's place of incorporation and principal place of business. *Id.* at 760 (internal quotation marks omitted). Only in an "exceptional case" will general jurisdiction be available anywhere else. *Id.* at 761 n.19.

*Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 2310 (2015).

Chavez argues only that Stellar, Inc. and Vincit are subject to specific jurisdiction, without addressing general jurisdiction or the "essentially at home" standard set forth in *Goodyear* and *Daimler*. *See* Opp'n at 5–9. Chavez does not argue that California is the place of incorporation or principal place of business for Stellar, Inc. or Vincit, and there is no indication that this is the sort of "exceptional case" where they should be subject to general jurisdiction in a forum that does not meet one of those criteria. *See Martinez*, 764 F.3d at 1070 (discussing *Daimler*, 571 U.S. at 136−38 & n.19). Stellar, Inc. and Vincit thus are not subject to general jurisdiction in California, and Chavez must show that they are subject to specific jurisdiction in order to pursue claims against them in this Court.

**D. It Is Not Clear Whether the Court Has Specific Jurisdiction Over Stellar, Inc. and Vincit for Claims Based on Chavez's Injury in California**

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). The exercise of specific jurisdiction "is consistent with due process" only where "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum state." *Id.*; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) ("The constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State.").

9

A court may exercise specific jurisdiction over a non-resident defendant where the following requirements are met:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Dole Food*, 303 F.3d at 1111. The plaintiff bears the burden of satisfying the first two prongs of the test for specific jurisdiction. *Id.* (citing *Sher v. Johnson*, 911 F.3d 1357, 1361 (9th Cir. 1990)). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King*, 471 U.S. at 476−78).

The Ninth Circuit "generally appl[ies] the purposeful availment test when the underlying claims arise from a contract, and the purposeful direction test when they arise from alleged tortious conduct." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017). Since "[w]age and hour claims asserted under the FLSA and state law are neither tort nor contract claims," some courts have addressed the first prong of the specific jurisdiction test under both the purposeful direction approach and the purposeful availment approach. *See Senne v. Kan. City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1022–23 (N.D. Cal. 2015). As both parties addressed the issues of purposeful direction and purposeful availment in their briefs, the Court will analyze both as well.

Because any conduct that might constitute purposeful direction or purposeful availment is only sufficient to establish jurisdiction if it relates to Chavez's claim, the following sections also address that prong of the test for specific jurisdiction. The Ninth Circuit employs a "'but for' test" to determine whether the plaintiff's claims arise out of or relate to the defendants' conduct. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). "This requirement is met if, but for a

10

defendant's forum-related activities through which a defendant purposely avails itself of the forum, the plaintiff would not have suffered injury." *Long v. Authentic Athletix LLC*, No. 16-cv-03129-JSC, 2016 U.S. Dist. LEXIS 142729, at *6 (N.D. Cal. Oct. 14, 2016) (quoting *Callaway Golf Corp. v. Royal Canadian Golf Ass'n*, 125 F. Supp. 2d 1194, 1204 (C.D. Cal. 2000) (internal quotation marks omitted)).

### 1. Purposeful Direction

One of the fundamental tests to determine purposeful direction is the *Calder* "effects test." *See Calder v. Jones*, 465 U.S. 783 (1984). The Ninth Circuit has construed *Calder* to impose three requirements: "the defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

Chavez mainly points to Stellar, Inc. and Vincit's online job postings to support his claim of purposeful direction. These postings were likely intentional acts. One of the job postings is on website branded with Vincit's name and logo, suggesting that Vincit itself placed it there. *See* Edelstein Decl. Ex. 1. The other posting on Indeed.com lists both Stellar, Inc. and Vincit as the employers, which suggests that they were also soliciting employment through that third-party site. *See* Edelstein Decl. Ex. 2. These postings are specifically aimed at California since the posting on Vincit's website states it is for "California locations" and the posting on Indeed.com is for "Petaluma, CA." *See* Edelstein Decl. Exs. 1, 2. The first two requirements of the *Calder* test are satisfied. With respect to the third requirement, Stellar, Inc. and Vincit argue that Chavez does not provide evidence that they were "likely to know Plaintiff would suffer numerous Labor Code violations." Reply at 6. To the extent that Stellar, Inc. and Vincit hired employees in California, however, they would reasonably expect any employment-related harms to those employees to occur in California. *See Senne*, 105 F. Supp. 3d at 1025–26 ("[W]here an employer knows that its employee is performing work in the forum, the third requirement is also satisfied because it is reasonably foreseeable that the harm that results from the alleged violations of wage and hour laws will be felt in California.").

11

Although soliciting a plaintiff's employment in California could constitute purposeful direction, Chavez has not shown that his claims in this case arise from such contacts with California, because he has not presented evidence that either Stellar, Inc. or Vincit solicited *his* employment or actually employed *him*, in California or anywhere else. Chavez does not claim that he responded to either of the job postings that he submits as evidence (both of which postdate his employment), and the wage statement he received does not distinguish between Stellar, Inc. and Group VII, both of which conduct business under names including the words "Stellar Management Group" and use the address listed on the statement. *See* Chavez Decl. Ex. A. No other evidence supports Chavez's somewhat qualified declaration that, "[t]o the best of [his] recollection, [he] applied to, was offered, and accepted [his] position from [Stellar, Inc.]," which is contradicted by Morrie Casura's declaration that Steller, Inc. neither employed non-exempt hourly employees in California nor "conducted operations or business within California" during the four year preceding the filing of this action. *See* Chavez Decl. ¶ 3; Casura Decl. ¶¶ 6–7.

Unless Chavez can show some connection between Stellar, Inc. or Vincit and his own employment, his claims do not arise out of those companies' contacts with California, even if, contrary to the declarations they now submit, they hired other employees in California. Chavez relies in part on the itemized wage statement he received from a sender identified as "Stellar Management Group" at 412 Georgia Ave, Suite 300, in Chattanooga, Tennessee. *See* Chavez Decl. Ex. A. According to Chavez, this indicates that it was sent from Stellar, Inc. Chavez Decl. ¶ 4. Stellar, Inc. contests whether Chavez has shown that it sent him the wage statement, rather than Group VII, which also has "Stellar Management Group" in its full name and shares the same address as Stellar, Inc. *See* Reply at 5; Casura Decl. ¶ 4. Based only on the current record, it is not clear which company sent Chavez the wage statement, and Chavez has not established that his claims arise out of Stellar, Inc. or Vincit's purposeful direction of any action towards California.

### 2. Purposeful Availment

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's action in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802 (quoting

12

*Hanson v. Deckla*, 357 U.S. 235, 253 (1958)). "[I]f the defendant directly solicits business in the forum state, the resulting transactions will probably constitute the deliberate transaction of business invoking the benefits of the forum state's laws." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986); *see also Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990) ("Soliciting business in the forum state will generally be considered purposeful availment if that solicitation results in contract negotiations or the transaction of business."), *rev'd on other grounds*, 499 U.S. 585 (1991).

To support his argument that Stellar, Inc. and Vincit purposefully availed themselves of the privilege of conducting activities in California, Chavez again focuses on the fact, that in his view, he applied for and accepted the job in California from Stellar, Inc. *See* Chavez Decl. ¶ 3. He again points to the two online job postings to show that Stellar, Inc. and Vincit were soliciting and hiring employees in California. *See* Edelstein Decl. Exs. 1, 2. Promoting sanitation jobs online with the prospect of hiring applicants in California for jobs located in California constitutes purposeful availment of the privilege of doing business in California. *See Decker Coal*, 805 F.2d at 840; *see also Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418–19 (9th Cir. 1997) (discussing the potential significance of "interactive websites" to purposeful availment); *Holden v. Canadian Consulate*, 92 F.3d 918, 921 (9th Cir. 1996) (in the separate context of subject matter jurisdiction under the Foreign Sovereign Immunities Act, adopting a standard from legislative history that "employment or engagement of laborers" constitutes "commercial activity"). Again, however, without evidence that Chavez himself responded to such an advertisement or worked for either Stellar, Inc. or Vincit, Chavez's claims do not arise out of such contacts.

### 3. Relationship Among Defendants

Chavez alleges that Defendants are "agents and employees of their co-defendants" and "acting within the course of such agency and employment." Compl. ¶ 18. In *Daimler*, the Court held that agency relationships "may be relevant to the existence of specific jurisdiction." *Daimler*, 571 U.S. at 135 n.13. Since corporations often act through their agents, "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Id.*; *see, e.g.*, *International Shoe*, 326 U.S. at 318 (holding that "acts of the corporate agent in a state"

13

may sometimes "be deemed sufficient to render the corporation liable to suit" on related claims). To establish an agency relationship, an agent must "act on the principal's behalf and subject to the principal's control." Restatement (Third) Of Agency § 1.01 (2006); *see also Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232 (9th Cir. 2013) ("Agency requires that the principal maintain control over the agent's actions."). Accordingly, even if Chavez was in fact employed by Group VII rather than directly by Stellar, Inc. or by Vincit, either or both of those companies might still be subject to the Court's personal jurisdiction if they exercised control over Group VII such that Group VII acted as their agent for purposes relevant to Chavez's employment.

To support this theory of control, Chavez points to the identical principal places of business for all three Defendants and the itemized wage statement that he received. As all Defendants have their principal place of business at "412 Georgia Ave, Suite 300, Chattanooga, TN 37403," Chavez argues that they must be associated and have some level of control over one another. *See* Opp'n at 4; Casura Decl. ¶ 4; Ways Decl ¶ 4.

An agency relationship, or at least some degree of overlapping control or operations, could also explain the discrepancy between the job postings and the declarations from Stellar, Inc. and Vincit. The job postings were accessed on February 1, 2019 and this case was filed on March 13, 2019. *See* Edelstein Decl. ¶¶ 4–5. Stellar, Inc. and Vincit both state in their declarations they have not "employed" or "conducted operations" within California "for the four years preceding the filing of this action," but offer no explanation why job postings for positions in California were available during that time bearing their names. *See* Casura Decl. ¶¶ 6–7; Way Decl. ¶¶ 6–7; Edelstein Decl. Exs. 1, 2. Even if the statements in their declarations are true in the sense that Stellar, Inc. and Vincit did not *directly* hire employees in California, they may have hired employees—including, perhaps, Chavez—through Group VII or some other entity acting as an agent. *See Foothill Capital Corp. v. Clare's Food Mkt. (In re Coupon Clearing Serv.)*, 113 F.3d 1091, 1099 (9th Cir. 1997) (quoting *Violette v. Shoup*, 16 Cal. App. 4th 611, 620 (1993)) ("One of the chief characteristics of an agency relationship is the 'authority to act for and in the place of the principal for the purpose of bringing him or her into legal relations with third parties.'"). If so, Stellar, Inc. and Vincit could be subject to this Court's jurisdiction as a result of having directed

14

their agent to "take action [in the forum state]." *Daimler*, 571 U.S. at 135 n.13.

\* \* \*

Important questions remain unanswered regarding the relationship among the three defendants and which entity in fact employed Chavez. On the current record, however, Chavez has not shown that his claims arise out of either Stellar, Inc.'s or Vincit's purposeful direction to California or purposeful availment of the privilege of doing business in California. This order does not reach the question of whether the exercise of jurisdiction would be reasonable.

### E. Jurisdictional Discovery is Warranted

"A district court is vested with broad discretion to permit or deny discovery" related to questions of jurisdiction. *Laub*, 342 F.3d at 1093. "'[D]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Id.* (quoting *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)). On the other hand, "refusal to allow further discovery before dismissing on jurisdictional grounds is not an abuse of discretion when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Am. W. Airlines*, 877 F.2d at 801 (citation and internal quotation marks omitted). Nor must a court allow discovery "based on little more than a hunch that it might yield jurisdictionally relevant facts." *Boschetto*, 539 F.3d at 1020.

The Court agrees with Chavez that all three Defendants having the same address for their principal places of business, down to the exact suite number, shows that the Defendants are affiliated in some way. *See* Opp'n at 4; Way Decl. ¶ 4; Casura Decl. ¶ 4. Vincit's website listing Stellar, Inc. as one of its "member companies" also seems to suggest a relationship between Stellar, Inc. and Vincit. *See* Edelstein Decl. Ex. 3. While this likely shows some level of connection between the Defendants, it is still unclear what the level of control Stellar, Inc. and Vincit have over Group VII and Chavez's employment. Additionally, the two online job postings listing Stellar, Inc. and Vincit as the employers suggest that the companies do have some contact with California, but the nature of such contact, including whether or how it relates to Chavez's former employment and present claims, similarly remains unclear.

Chavez seeks jurisdictional discovery because he believes it would "provide clarity as to whether Vincit owns or manages [Stellar, Inc.], whether Vincit or [Stellar, Inc.] owns or manages any portion of [Group VII] . . . and the extent of Vincit and [Stellar, Inc.] directed efforts to recruit prospective employees . . . in California." *Id.* As discussed above, jurisdictional discovery would likely resolve both the ambiguity of which company directly employed Chavez and sent his wage statement, and the tension between, on one hand, Stellar, Inc. and Vincit's declarations that they conducted no business in California and, on the other hand, the job postings suggesting that they sought to hire employees in California during the same time period. The Court therefore finds that "a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986). Chavez's request for jurisdictional discovery is GRANTED.

## IV. CONCLUSION

For the reasons discussed above, Chavez's request for jurisdictional discovery is GRANTED. Stellar, Inc. and Vincit's motion to dismiss is DENIED without prejudice either or both of them renewing the motion after Chavez has had an opportunity to conduct limited discovery and develop a more complete record of Stellar, Inc. and Vincit's role in his employment.

**IT IS SO ORDERED.**

Dated: June 28, 2019

JOSEPH C. SPERO
Chief Magistrate Judge