UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CHAVEZ,<br><br>  Plaintiff,<br><br>  v.<br><br>STELLAR MANAGMENT GROUP VII, LLC, et al.,<br><br>  Defendants. | Case No. 19-cv-01353-JCS<br><br>**ORDER DENYING RENEWED MOTION TO DISMISS**<br><br>Re: Dkt. No. 45 |

**I.   INTRODUCTION**

The Court previously denied without prejudice a motion by Defendants Stellar Management Group, Inc. ("Stellar Inc.") and The Vincit Company, LLC ("Vincit LLC") to dismiss for lack of personal jurisdiction, without prejudice to those defendants renewing their motion after jurisdictional discovery. *See* Order Denying Mot. to Dismiss (dkt. 28).[1] A third defendant, Stellar Management Group VII, LLC ("Group VII") does not contest personal jurisdiction and has answered Plaintiff David Chavez's complaint.[2] All three defendants, among other entities, are part of a network of companies known as The Vincit Group. Because there is at least some evidence that individual entities at times used "The Vincit Group" as a trade name, to avoid confusion this order refers to the collection of companies as the "Vincit Network." With jurisdictional discovery now complete, Stellar Inc. and Vincit LLC have filed a renewed motion to dismiss Chavez's claims against them for lack of personal jurisdiction. The Court held a hearing

---

[1] *Chavez v. Stellar Mgmt. Grp. VII, LLC*, No. 19-cv-01353-JCS, 2019 WL 2716292 (N.D. Cal. June 28, 2019)
[2] The terminology used in this order differs from Chavez's briefs, which refer to Stellar Management Group, Inc. as "QSI" and Stellar Management Group VII, LLC as "Stellar."

1 | on January 31, 2020.  For the reasons discussed below, the motion is DENIED.[3]

## II. BACKGROUND

### A. Allegations of the Complaint

Chavez is a resident of California who allegedly applied for and accepted a job as a sanitation worker for Defendants in August 2018 at the Foster Farms plant in Livingston, California. *See* Compl. (dkt. 1) ¶¶ 11–12, 26.  He seeks to represent a class of individuals who have worked for Defendants as "non-exempt, hourly employees, including but not limited to Sanitation Workers." *Id.* ¶ 1.  Chavez claims that Defendants violated wage and hour laws by: (1) failing to permit employees to take meal and rest breaks; (2) failing to provide premium pay for these missed breaks; (3) failing to compensate for all hours worked; (4) failing to pay overtime; (5) failing to provide accurate, itemized wage statements; and (6) failing to timely pay employees upon resignation or termination. *Id.* ¶ 2.  Chavez believes that Vincit LLC "serves in a capacity of direct control over the operation of its agents," which include Stellar Inc. and Group VII. *Id.* ¶ 19.  According to Chavez, Defendants "jointly exercised control over [Chavez] and [the] putative Class and Collective members with respect to work assignments." *Id.*  Chavez further alleges that Defendants recruit employees for sanitation jobs in California under the employer names of "The Vincit Group" and "QSI," otherwise known as Stellar, Inc. *Id.*  Chavez believes that Defendants are "either solely or jointly and severally liable" for the improper conduct. *Id.* ¶ 20.  Chavez's complaint includes claims under California law and the federal Fair Labor Standards Act (the "FLSA"). *See id.* ¶¶ 53–132.

### B. Evidentiary Record

Stellar Inc. and Vincit LLC argue they are not subject to personal jurisdiction by this court, relying in part on declarations by the Division Manager of Stellar, Inc., Morrie Casura, and the Director of Global Sourcing of Vincit, Tammy Way, both of which were submitted with Stellar Inc. and Vincit LLC's first motion to dismiss. *See generally* Casura Decl. (dkt. 18-1); Way Decl. (dkt. 18-2).  According to those declarations, both Stellar Inc. and Vincit LLC are incorporated

---
[3] The parties have consented to the undersigned magistrate judge presiding over the case for all purposes pursuant to 28 U.S.C. § 636(c).

2

and have their principal place of business in Chattanooga, Tennessee. Casura Decl. ¶¶ 3−4; Way Decl. ¶¶ 3−4. For the four years preceding this action, each company reportedly "has not employed non-exempt sanitation workers or other hourly employees within California" and "has not conducted operations or business within California." Casura Decl. ¶¶ 6−7; Way Decl. ¶¶ 6−7. Way declares Vincit LLC "does not control Stellar, Inc. or Group VII" and it is not "a member or manager of Group VII." Way Decl. ¶¶ 5, 7. Casura similarly states that "Group VII and Vincit [LLC] are not owned by Stellar, Inc., nor is Stellar, Inc. a member or manager of either LLC." Casura Decl. ¶ 5.

Chavez argues that the Court has specific personal jurisdiction over Stellar Inc. and Vincit LLC based on their involvement with operations in California, relying primarily on website screenshots submitted in opposition to the first motion and deposition testimony taken after the Court's previous order allowing jurisdictional discovery. The Vincit Network uses the name "QSI" to refer collectively to Stellar Inc. (sometimes known as "Q-0") and seven regional entities set up "for tax purposes" including Group VII (sometimes known as "Q-7"), which are in the business of sanitation outsourcing for the food production industry. *See* 1st Edelstein Decl. (dkt. 20-2) Ex. 3; 2d Edelstein Decl. (dkt. 47-1) Ex. 3 (Bryant Dep.) at 14:6–11, 16:20–22, 21:25–23:21, 124:11–20. Group VII does business in California, while the other numbered "QSI" entities do business elsewhere in the country. *See* 2d Edelstein Decl. Ex. 3 (Bryant Dep.) at 26:3–5. Vincit LLC, Stellar Inc., Group VII, and all of the other QSI entities share the same address in Tennessee. *Id.* at 70:18–71:8.

Robert Bullard serves as president and CEO, and owns at least a portion, of all three defendants—Vincit LLC, Stellar Inc., and Group VII. 2d Edelstein Decl. Ex. 1 (Hamilton Dep. I) at 139:9–22, 140:16–141:4; 2d Edelstein Decl. Ex. 3 (Bryant Dep.) at 73:14–25, 83:5–22; 2d Edelstein Decl. Ex. 5 (Way Dep.) at 55:12–16, 86:22–87:7. According to Stellar Inc.'s executive vice president (and person-most-knowledgeable deponent) Jeffrey Byrant, all of Stellar Inc.'s stock is owned by Robert Bullard (Stellar Inc.'s president and CEO) and Dawn Bullard. *Id.* at 73:14–25. Bryant testified that he receives reports about performance and productivity at Vincit Network facilities, and that he uses that information to give advice to the people running those

3

facilities and also "report[s] that information to Mr. Bullard." *Id.* at 24:13–25:6. In a previous role as "senior VP" of Stellar Inc., Bryant traveled to the plants more often, including twice to California. *Id.* at 25:8–26:9. A former vice president of Group VII reported to Bryant "about the work going on at the facilities that . . . Group VII was working on in California," and Bryant gave him advice. *Id.* at 25:21–26:24. There was conflicting testimony, as discussed further below in the analysis of Stellar Inc.'s direction of conduct to California, as to whether Stellar Inc. personnel had authority over Group VII's human resources department.

Vincit LLC "provides services to [its] members companies who are part of the Vincit Group," including for Group VII "consulting . . . with regards to matters of HR," "[a]dministration services," "payroll services, and personnel management," among other things. 2d Edelstein Decl. Ex. 5 (Way Dep.) at 14:19–21, 36:11–21, 44:1–17, 46:15–47:8.[4] Vincit LLC has "identical" service agreements with Group VII and with Stellar Inc. and provides the same services to both. *See id.* at 49:22–50:8.

Vincit LLC helps Group VII hire employees in California by posting job openings on Vincit LLC's website and forwarding applications to Group VII, although Vincit LLC does not screen those applications. 2d Edelstein Decl. Ex. 1 (Hamilton Dep. I) at 40:4–41:15, 133:10–15. Vincit LLC also "collect[s] the hours from [Group VII's] hourly workers and generates their checks" and wage statements, including for Plaintiff Chavez. *Id.* at 41:16–42:4. Group VII's person-most-knowledgeable Juanaisela Hamilton testified in one instance that Vincit LLC pays

---

[4] Plaintiff's counsel apparently intended to file the agreement between Vincit and Group VII under seal as Exhibit 7 to the December 6, 2019 declaration of Ori Edelstein, but failed to include that document with the accompanying administrative motion to file under seal. *See* dkt. 48. The same is true for Exhibit 8 (a contract between the "Vincit Group" and Purdue Foods) and Exhibit 9 (a document describing signature authority for various companies) to that declaration. The relevant contents of these documents appear to be addressed fully in deposition testimony such that the documents themselves are not necessary to the resolution of the present motion. In the interest of efficiency, the motion to file under seal is DENIED for failure to attach the actual documents sought to be filed under seal as required under Civil Local Rule 79-5, and Chavez may not file those documents in the public record at this time. If any party wishes to preserve an objection to this order on the grounds that those documents were necessary and the deposition testimony describing them is insufficient or inadmissible without them, however, that party must file notice to that effect no later than seven days after the date of this order, and the Court will consider allowing Chavez to file a renewed motion to file those documents under seal to complete the record.

4

the payroll taxes for Group VII employees, *id.* at 101:19–102:1, but later that Group VII pays its own payroll taxes, 2d Edelstein Decl. Ex. 2 (Hamilton Dep. II) at 211:18–21.

Vincit LLC drafts "policies and procedures" for Group VII to "implement in California"—including "policies and procedures relative to timekeeping," "meal periods," and "overtime"—and is responsible for Group VII's employee handbook, including portions pertaining to job duties, timekeeping, meal and rest breaks, overtime, and pay procedures. 2d Edelstein Decl. Ex. 1 (Hamilton Dep. I) at 42:7–20, 46:25–47:2, 102:2–21, 112:14–113:12. Senior Group VII officers play in a role in approving those documents before they are distributed to Group VII employees; testimony was somewhat contradictory and equivocal as to whether any Group VII personnel were involved in drafting the documents. *Id.* at 113:13–114:4; 2d Edelstein Decl. Ex. 2 (Hamilton Dep. II) at 228:16–234:19. Vincit LLC employee Rebecca Hulgan testified that she worked on drafting the employee handbook to comply with California rest break laws. 2d Edelstein Decl. Ex. 4 (Hulgan Dep.) at 100:10–101:7. Vincit LLC does not have the authority to hire, fire, monitor, supervise, discipline, set pay rates, or modify time entries for Group VII sanitation workers in California, or to "tell [Group VII] what policies for employment it has to use." Bothamley Reply Decl. (dkt. 51-6) Ex. 1 (Hamilton Dep.) at 260:1–262:3.

Group VII employees who have email addresses use Vincit LLC's domain name for those addresses. 2d Edelstein Decl. Ex. 1 (Hamilton Dep. I) at 95:12–25. Group VII intends for its sanitation workers to represent themselves as employees of "Vincit" or the "The Vincit Group." 2d Edelstein Decl. Ex. 2 (Hamilton Dep. II) at 267:12–268:16.

Group VII provides sanitation services to a Purdue Foods plant in Petaluma, California pursuant to a contract between Purdue Foods and the "Vincit Group," despite the fact that Group VII is not specifically named as a party to that contract. 2d Edelstein Decl. Ex. 1 (Hamilton Dep. I) at 116:2–117:24. Group VII's person most knowledgeable under Rule 30(b)(6), Juanaisela Hamilton, testified that Group VII receives payment for those services but that she did not know "where that payment comes from." 2d Edelstein Decl. Ex. 2 (Hamilton Dep. II) at 236:9–237:9. Hamilton also testified that the "Vincit Group name on this contract is incorrect," and "[i]t should have state[d] Stellar Management Group VII . . . [b]ecause the Stellar Management Group VII is

5

who's contract the business, and The Vincit Group isn't even a company, it's just a name, a marketing name." *Id.* at 271:10–18.

### III. ANALYSIS

#### A. Legal Standard for Motions to Dismiss Under Rule 12(b)(2)

A party may move for dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. The plaintiff bears the burden of establishing personal jurisdiction over the defendant. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Id.* (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, . . . uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotation marks omitted). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.*

The Ninth Circuit has held that requiring only a prima facie showing of personal jurisdiction at the outset of a case is preferable to holding an evidentiary hearing if the disputed issues also go to the merits of the case:

> Where the jurisdictional facts are intertwined with the merits, a decision on the jurisdictional issues is dependent on a decision of the merits. In such a case, the district court could determine its jurisdiction in a plenary pretrial proceeding. However, it is preferable that this determination be made at trial, where a plaintiff may present his case in a coherent, orderly fashion and without the risk of prejudicing his case on the merits. Accordingly, where the jurisdictional facts are enmeshed with the merits, the district court may decide that the plaintiff should not be required in a Rule 12(d) preliminary proceeding to meet the higher burden of proof which is associated with the presentation of evidence at a hearing, but rather should be required only to establish a prima facie showing of jurisdictional facts with affidavits and perhaps discovery materials. Of course, at any time when the plaintiff avoids a preliminary motion to dismiss by making a prima facie showing of jurisdictional facts, he must still prove the jurisdictional facts at trial by a preponderance of the evidence.

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.2 (9th Cir. 1977) (internal citations omitted without ellipses).

Personal jurisdiction depends on both substantive law and constitutional due process considerations. "Where . . . there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002). As the FLSA is silent as to personal jurisdiction, the Court applies the law of California to determine whether personal jurisdiction exists. *See Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir. 1992). "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Dole Food*, 303 F.3d at 1110 (citing Cal. Civ. Proc. Code § 410.10).

"For a court to exercise personal jurisdiction over a non-resident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 1110−11 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder v. Jones*, 465 U.S. 781, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

Personal jurisdiction may be either general or specific. *See Bancroft & Masters, Inc. v. Augusta Nat'l Inc*., 223 F.3d 1082, 1086 (9th Cir. 2000). In *Goodyear*, the Supreme Court explained that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe*, 326 U.S. at 317). On the other hand, "[s]pecific jurisdiction . . . depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id*. (alteration in original; citation omitted). Thus, "[i]n contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id*. (citation and internal quotation marks omitted).

7

The Court previously held that neither Vincit LLC nor Stellar Inc. fall within its general personal jurisdiction, and Chavez argues only that those defendants are subject to specific personal jurisdiction based on their purposeful direction of conduct towards California. A court may exercise specific jurisdiction over a non-resident defendant where the following requirements are met:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Dole Food*, 303 F.3d at 1111. The plaintiff bears the burden of satisfying the first two prongs of the test for specific jurisdiction. *Id*. (citing *Sher v. Johnson*, 911 F.3d 1357, 1361 (9th Cir. 1990)). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id*. (quoting *Burger King*, 471 U.S. at 476−78).

One of the fundamental tests to determine purposeful direction is the *Calder* "effects test." *See Calder v. Jones*, 465 U.S. 783 (1984). The Ninth Circuit has construed *Calder* to impose three requirements: "the defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

Because any conduct that might constitute purposeful direction is only sufficient to establish jurisdiction if it relates to Chavez's claim, the following sections also address that prong of the test for specific jurisdiction. The Ninth Circuit employs a "'but for' test" to determine whether the plaintiff's claims arise out of or relate to the defendants' conduct. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). "This requirement is met if, but for a defendant's forum-

8

related activities through which a defendant purposely avails itself of the forum, the plaintiff would not have suffered injury." *Long v. Authentic Athletix LLC*, No. 16-cv-03129-JSC, 2016 U.S. Dist. LEXIS 142729, at *6 (N.D. Cal. Oct. 14, 2016) (quoting *Callaway Golf Corp. v. Royal Canadian Golf Ass'n*, 125 F. Supp. 2d 1194, 1204 (C.D. Cal. 2000) (internal quotation marks omitted)).

### B. Preclusive Effect of Superior Court Order

On October 16, 2019, the California Superior Court for Sonoma County granted a motion by Stellar Inc. and Vincit LLC to quash service for lack of personal jurisdiction in a case brought by Chavez under the Private Attorneys General Act. Bothamley Surreply Decl. (dkt. 54-1) Ex. E. No party brought that order to this Court's attention until Stellar Inc. and Vincit LLC moved for leave to file a surreply on January 7, 2020, which this Court granted. Stellar Inc. and Vincit LLC argue in their surreply that the Superior Court's order is preclusive on the issue of minimum contacts with California, and thus personal jurisdiction, because the order became final when the time for Chavez to appeal expired on December 26, 2019.

Under the doctrine of issue preclusion, also known as collateral estoppel, "a party is precluded from relitigating an issue if four requirements are met: (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated; (3) there was final judgment on the merits; and (4) the person against whom collateral estoppel is asserted was a party to or in privity with a party in the previous action." *Wolfson v. Brammer*, 616 F.3d 1045, 1064 (9th Cir. 2010); *see also Samara v. Matar*, 5 Cal. 5th 322, 327 (2018) (defining the test similarly under California law).

Among other arguments, Chavez contends that the Superior Court's order was not a *final* decision, because, at oral argument, that court expressly granted Chavez leave to seek amendment or reconsideration of its order based on the discovery that Chavez was pursuing in this action, and Chavez intends to do so after this Court resolves the present motion. Pl.'s Supp'l Br. (dkt. 57) (citing Edelstein Supp'l Decl. (dkt. 57-1) ¶ 3). Although the Superior Court's written order—which was the proposed order submitted to it by Defendants—makes no reference to such leave, this Court accepts Plaintiff's counsel's declaration describing the Superior Court's characterization

9

1    of its order. This Court concludes that an order issued with the stated intention of allowing a party

2    to seek reconsideration is not a "final judgment on the merits," *Wolfson*, 616 F.3d at 1064, or a

3    "final adjudication," *Samara*, 5 Cal. 5th at 327, sufficient to establish issue preclusion. Moreover,

4    with due respect to the comity concerns underlying the doctrine of issue preclusion, deferring to an

5    order issued by another court while the jurisdictional discovery that this Court previously ordered

6    was pending would also raise serious questions of comity regarding this Court's ability to manage

7    its case schedules. The Court turns to the merits of the present motion without reaching Chavez's

8    remaining arguments against preclusion.

### C. Purposeful Direction by Vincit LLC

Chavez has offered evidence that, among other services for Group VII, Vincit LLC drafted Group VII's policies governing most if not all of the work and payroll practices at issue in this case, and that Vincit LLC processed Group VII's payroll and issued the allegedly defective pay checks and wage statements on which Chavez's claims are based. There is no real question that drafting policies governing employees in California and issuing wage statements and paychecks to those employees constitutes intentional activity purposefully directed to California, but Vincit LLC argues that Chavez has not shown any harm caused by Vincit LLC's conduct. Reply at 9–10.

Vincit LLC might be correct on the merits that Chavez's claims are based on failure to follow the policies that it drafted rather than any flaws therein, and that its conduct in issuing payroll was equivalent to that of a third-party payroll processing company, which the California Supreme Court has held owes no duty to employees of its clients. *See Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 838–41 (2019) (holding that an employee's common law negligence claim against a payroll processing company failed for lack of a duty of care). On the present motion, however, the viability of Chavez's claims on their merits is not at issue. Chavez has made a prima facie showing that Vincit LLC was responsible for drafting the policies governing his employment in California, including as to the specific issues from which his claims arise. Vincit LLC would reasonably have expected that any harm caused by those policies would be felt in California, and at this stage, it is reasonable to infer that a more thorough or forceful policy might have prevented the purported violations. Vincit LLC also would reasonably have expected that any harm caused

by defective wage statements would likely be suffered by employees in California. Even if California law, as articulated in *Goonewardene*, might exempt Vincit LLC from *liability* for such harm, that would not remove Vincit LLC from personal *jurisdiction* of the courts of California for conduct that it directed at California, either under the Due Process Clause of the United States Constitution or under California's coextensive long-arm statute.[5] To hold otherwise would allow an out-of-state defendant to raise merits arguments more appropriate for summary judgment or trial under the guise of a jurisdictional motion to dismiss, often with limited opportunity for discovery. The motion to dismiss is DENIED as to Vincit LLC.

### D. Purposeful Direction by Stellar Inc.

The question of Stellar Inc.'s purposeful direction is less clear, in part because even Defendants' employees offered as persons-most-knowledgeable for depositions under Rule 30(b)(6) often seemed not know the intricacies of the relationship between Stellar Inc. and Group VII, or which entity employed certain personnel in potentially relevant positions of responsibility. As Chavez notes, for example, Stellar Inc.'s deponent Jeff Bryant testified that "IPT Director" Teresa Hufstler or Huffstutler (hereinafter "Teresa," because the spelling of her surname varies across different transcripts), who was responsible for human resources for employees in California, was employed by Group VII (2d Edelstein Decl. Ex. 3 (Bryant Dep.) at 53:22–54:7), while Group VII's deponent Juanaisela Hamilton testified—in the second portion of her deposition, after she was able to research the issue—that Teresa was employed by Stellar Inc. (2d Edelstein Decl. Ex. 2 (Hamilton Dep. II) at 199:5–12).[6] Chavez has also made at least a prima

---

[5] The *Goonewardene* decision finding no duty on the part of payroll companies is based on policy considerations, including: (1) that employees already have a remedy against employers for payroll violations; (2) that payroll companies already have incentives to comply with the law to avoid liability to employers; (3) the lack of any special relationship between payroll companies and employees; (4) a desire to avoid "improperly distort[ing] the payroll company's performance of its contractual obligations to the employer"; and (5) avoiding "an unnecessary and potentially burdensome complication to California's increasing volume of wage and hour litigation." 6 Cal. 5th at 839–41. It is not based on constitutional considerations of due process. Had the court reached the opposite conclusion—as would presumably be permissible under the Constitution—and held payroll processing companies liable to employees for violations, it would be difficult to see how payroll companies located outside of California but knowingly sending wage statements and paychecks to employees in California would not be subject to the personal jurisdiction of California courts for that conduct.

[6] As another example, neither Bryant nor Hamilton appears to have known which entity employed

11

facie showing that Stellar Inc. employee Amy Yancy, who preceded Teresa as "IPT Director," had authority over Group VII. While Stellar Inc. witness Jeff Bryant testified that Yancy was not "responsible for HR in California," he also testified that the person who was "responsible" during at least some of the relevant time period, Miguel Moscoso, reported to Yancy. *See* Coleman Reply Decl. Ex. 3 (Bryant Dep.) at 54:19–55:21. Hamilton testified that the IPT Director had "authority" to participate in the disciplinary process for Group VII employees in California, although in practice that "never happens." *See* 2d Edelstein Decl. Ex. 1 (Hamilton Dep. I) at 165:2–10

Resolving conflicting evidence in Chavez's favor—as the Court must at this stage, *Schwarzenegger*, 374 F.3d at 800—Chavez has made a prima facie showing sufficient to support the conclusion that Stellar Inc. purposefully directed conduct towards California by placing one of its employees in a position of authority over Group VII's human resources decisions—evidence that could also support a conclusion that Group VII acted as an agent of Stellar Inc. with respect to human resources issues. Taking that view of the evidence, any harm caused by failure not only to implement, but also to enforce, work and payroll policies that complied with California law would reasonably be expected to be suffered in California, and Chavez's claims arise from working conditions established under Stellar Inc.'s ultimate authority. The motion to dismiss is therefore DENIED as to Stellar Inc.

The Court does not reach Chavez's argument that Stellar Inc. is subject to personal jurisdiction because it is an alter ego of Group VII, but notes Chavez's concession that—despite having been granted four months to conduct jurisdictional discovery—he has not yet pursued discovery regarding "commingling of funds and other assets, and the capitalization or under capitalization of the various entities," as would likely be necessary to meet that doctrine's requirement that "failure to disregard the separate entities would result in fraud or injustice." *See*

---

Tracy Kemp, despite Kemp having reported to Bryant and served as a "VP," "Senior VP," or "VP of Operations" with respect to Group VII—Bryant testified that he believed Kemp was a Group VII employee; Hamilton testified that he was not. Edelstein Decl. Ex. 2 (Hamilton Dep. I) at 152:3–7; Edelstein Decl. Ex. 2 (Hamilton Dep. II) at 211:13–17, 229:2–11; Edelstein Decl. Ex. 3 (Bryant Dep.) at 25:25–26:13, 59:7–24.

Opp'n at 15–16 & n.15.

## IV. CONCLUSION

For the reasons discussed above, Vincit LLC and Stellar Inc.'s renewed motion to dismiss for lack of personal jurisdiction is DENIED.

**IT IS SO ORDERED.**

Dated: February 21, 2020

JOSEPH C. SPERO
Chief Magistrate Judge