Carolyn H. Cottrell (SBN 166977)
Ori Edelstein (SBN 268145)
Michelle S. Lim (SBN 315691)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile:  (415) 421-7105
ccottrell@schneiderwallace.com
oedelstein@schneiderwallace.com
mlim@schneiderwallace.com

Attorneys for Plaintiff, and the Putative Class
and Collective

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CHAVEZ and VINCENT SLAUGHTER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> STELLAR MANAGEMENT GROUP VII, LLC; STELLAR MANAGEMENT GROUP, INC. d/b/a QSI QUALITY SERVICE INTEGRITY; THE VINCIT COMPANY, LLC d/b/a  THE VINCIT GROUP and VINCIT ENTERPRISES, <br><br> Defendants. | Case No.:  3:19-cv-01353-JCS <br><br> **FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

## FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs David Chavez and Vincent Slaughter ("Plaintiffs"), on behalf of themselves and all others similarly situated, complain and allege as follows:

## INTRODUCTION

1.    Plaintiffs bring this class and collective action on behalf of themselves and other similarly situated individuals who have worked for Stellar Management Group VII, LLC; Stellar Management Group, Inc. d/b/a QSI Quality Service Integrity; The Vincit Company, LLC d/b/a The Vincit Group and Vincit Enterprises (collectively, "QSI" or "Defendants") as non-exempt, hourly employees, including but not limited to Sanitation Workers, to challenge QSI's violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and California wage and hour laws.

2.    This is a class action against QSI to challenge its policies and practices of: (1) failing to authorize employees to take meal periods and rest breaks to which they are entitled by law; (2) failing to provide the required premium pay to employees for missed or noncompliant meal and rest breaks; (3) failing to compensate employees for all hours worked; (4) failing to pay required minimum and overtime wages; (5) failing to provide employees with accurate, itemized wage statements as a result of the meal and rest break and other violations; and (6) failing to timely pay employees full wages upon termination or resignation as a result of the meal and rest break violations and other violations.

3.    Plaintiffs and members of the putative Class and Collective are current and former employees who worked for QSI as non-exempt hourly employees throughout the United States, including in California. These employees provide sanitation services for meat processing companies. Among other tasks, Plaintiffs and putative Class and Collective members are responsible for preparing and spraying liquid chemicals, cleaning off and sanitizing equipment, performing regular maintenance on sanitation equipment, preparing the facility for audits by federal and state agencies, practicing food safety procedures, and protecting the brand image of meat processing companies.

4.    Plaintiffs and putative Class and Collective members are not paid overtime rates or double time rates for all hours worked in excess of eight per day and forty per week as appropriate. Plaintiffs and putative Class members are also not paid the minimum wage for all hours worked in

violation of California law.  Despite their long shifts, Plaintiffs and putative Class and Collective members are also routinely denied legally compliant meal and rest periods.

5.    Plaintiffs and putative Class members do not receive accurate, itemized wage statements reflecting the hours they actually work and the amount of wages and overtime to which they are entitled and for which they should be compensated.  Nor are Plaintiffs and putative Class members paid all amounts owed following voluntary or involuntary termination of employment.

6.    As a result of these violations, Plaintiffs seek compensation, damages, penalties, and interest to the full extent permitted by the FLSA, the California Labor Code, and Industrial Welfare Commission ("IWC") Wage Orders.

7.    QSI is also liable for violation of the Unfair Competition Law, Business and Professions Code §§ 17200 *et seq*. ("UCL").

8.    Plaintiffs also seek declaratory, equitable, and injunctive relief, including restitution.

9.    Finally, Plaintiffs seek reasonable attorneys' fees and costs under the FLSA, the Labor Code, and California Code of Civil Procedure § 1021.5.

## **PARTIES**

10.    Plaintiffs and the putative Class and Collective members are current and former hourly, non-exempt employees who work for QSI as Sanitation Workers, among other positions, throughout the United States, including in California.

11.    Plaintiff Chavez is an individual over the age of eighteen, and at all times relevant to this Complaint was a resident and citizen of the State of California.

12.    Plaintiff Slaughter is an individual over the age of eighteen, and at all times relevant to this Complaint was a resident and citizen of the State of California.

13.    QSI employed Plaintiff Chavez as a sanitation worker in California in 2018. Plaintiff worked for QSI as an hourly, non-exempt employee and was subject to the policies set forth in this complaint.

14.    QSI employed Plaintiff Slaughter as a sanitation worker in California in 2019. Plaintiff worked for QSI as an hourly, non-exempt employee and was subject to the policies set forth in this

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Chavez v. Stellar Management Group VII, LLC, et al.*

1  complaint.

2      15.    Plaintiffs are informed, believe, and thereon allege that Defendant The Vincit Company,

3  LLC is a Tennessee limited liability corporation and is and has been at all times relevant to this

4  complaint a citizen of Chattanooga, Tennessee where it  maintains its headquarters.

5      16.    Plaintiffs are informed, believe, and thereon allege that Defendant The Stellar

6  Mangagement, Inc. is a Tennessee corporation and is and has been at all times relevant to this complaint

7  a citizen of Chattanooga, Tennessee where it  maintains its headquarters.

8      17.    Plaintiffs are informed, believe, and thereon allege that Defendant Stellar Management

9  Group VII, LLC is a Tennessee limited liability corporation and is and has been at all times relevant to

10  this complaint a citizen of Chattanooga, Tennessee where it maintains its principal office.

11      18.    Plaintiffs are informed, believe, and thereon allege that Defendant Stellar Management

12  Group, Inc. provides sanitation services at meat processing facilities as a subcontracted service provider

13  nationwide, including in the State of California.

14      19.    Plaintiffs are informed, believe, and thereon allege that QSI provides animal processing

15  services, including engineering, chemical application, equipment outfitting, and logistics support in

16  California and throughout the United States.

17      20.    Plaintiffs are informed, believe, and thereon allege that QSI provides animal processing

18  services, including sanitation, engineering, chemical application, equipment outfitting, and logistics

19  support in California and throughout the United States.

20      21.    Plaintiffs are informed, believe, and thereon allege that QSI employs non-exempt

21  sanitation workers and other hourly employees throughout California, including in Merced County and

22  Sonoma County.

23      22.    Plaintiffs are informed, believe, and thereon allege that at all times mentioned in this

24  Complaint, Defendants were the agents and employees of their co-defendants and in doing the things

25  alleged in this Complaint were acting within the course and scope of such agency and employment.

26      23.    Plaintiffs are informed, believe, and thereon allege that Defendant The Vincit Group,

27  LLC serves in a capacity of direct control over the operations of its agent, Defendants Stellar

28

Management Group, Inc., and Stellar Management Group VII, LLC. Plaintiffs are informed, believe, and thereon allege that The Vincit Group, LLC, Stellar Management Group, Inc., and Stellar Management Group VII, LLC jointly exercised control over Plaintiffs and putative Class and Collective members with respect to work assignments to service QSI's customers. In California, QSI recruits employees for the job position of Sanitation Worker under the employer names of "The Vincit Group" and "QSI." Likewise, The Vincit Group, LLC's website describes QSI as one of its eight "member companies" and advertises "Sanitation Team Member" positions throughout California.

24.    Plaintiffs are informed, believe, and allege that Defendants are either solely or jointly and severally liable for the conduct described in this complaint.

25.    At all relevant times, QSI has done business under the laws of the United States, including California, including in this judicial district, and has employed Class and Collective members in this judicial district. At all relevant times, QSI has been Plaintiffs' "employer" within the meaning of the FLSA and California law. QSI is a "person" as defined in Labor Code § 18. QSI is also an "employer" as that term is used in the Labor Code and the IWC Wage Orders regulating wages, hours, and working conditions.

## JURISDICTION AND VENUE

26.    This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 and Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

27.    Currently and at the time of the filing of this action, this court also has federal question jurisdiction over the subject matter of Plaintiffs' state law causes of action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). Under CAFA, this court has original jurisdiction over Plaintiffs' Rule 23 class action claims because the matter in controversy is believed to exceed $5,000,000, and because Plaintiffs and at least one of the Defendants are citizens of different states. Moreover, the number of proposed class members in California is believed to exceed 100.

28.    Currently, and at the time of the filing of this action, this Court also has federal diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Chavez v. Stellar Management Group VII, LLC, et al.*

1    amount in controversy for Plaintiffs' claims each exceed the sum or value of $75,000.

2        29.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. A substantial part

3    of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

4                                **FACTUAL ALLEGATIONS**

5        30.    QSI provides animal processing services, including sanitation, engineering, chemical

6    application, equipment outfitting, and logistics support in California and throughout the United States.

7        31.    Plaintiffs are informed, believe, and thereon allege that QSI services dozens of facilities

8    throughout the United States, including in California. To conduct its operations, QSI maintains an

9    operation structure that incorporates the staffing of largely hourly, non-exempt employees who are

10    required to handle a variety of tasks, including sanitation services. This operation structure is uniform

11    and standardized throughout QSI's operations. The employment conditions for the non-exempt, hourly

12    employees are substantially similar, if not identical, at QSI work locations throughout the United States,

13    including in California.

14        32.    QSI employed Plaintiff Chavez as an hourly, non-exempt sanitation worker in

15    approximately August 2018. Plaintiff Chavez worked for QSI at the Foster Farms plant in Livingston,

16    California.

17        33.    Plaintiff Chavez was paid approximately $11.50 per hour, and worked ten to twelve hours

18    per day.

19        34.    QSI employed Plaintiff Slaughter as an hourly, non-exempt sanitation worker in

20    approximately November and December 2019. Plaintiff Slaughter worked for QSI at the Foster Farms

21    plant in Livingston, California.

22        35.    Plaintiff Slaughter was paid approximately $12.00 per hour, and regularly worked seven

23    days per week. Plaintiff Slaughter regularly worked seven to ten hours per day on Sundays through

24    Thursday, over eight hours on Fridays, and at least five hours on Saturdays. On at least one occasion

25    during his employment Plaintiff Slaughter worked 40 or more hours per week.

26        36.    Plaintiffs' duties included, without limitation, donning and doffing protective equipment,

27    convening for safety meetings at the start of each shift, cleaning off and sanitizing poultry equipment,

28

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Chavez v. Stellar Management Group VII, LLC, et al.*

1  preparing and spraying liquid chemicals, performing regular maintenance on sanitation equipment,

2  preparing the facility for audits by federal and state agencies, practicing food safety procedures, and

3  ultimately protecting the brand image of meat processing companies.

4      37.    Similar to Plaintiffs, the putative Class and Collective members are current and former

5  non-exempt employees, including Sanitation Workers, who work and/or worked for QSI throughout

6  the United States, including in California. These workers perform duties including, but not limited to:

7  donning and doffing protective equipment, convening for safety meetings at the start of each shift,

8  preparing and spraying liquid chemicals, cleaning off and sanitizing poultry equipment, performing

9  regular maintenance on sanitation equipment, preparing the facility for audits by federal and state

10 agencies, practicing food safety procedures, and protecting the brand image of meat processing

11 companies.

12     38.    Plaintiffs are informed, believe, and thereon allege that at all relevant times QSI's

13 employment policies and practices have been substantially the same for Plaintiffs and the putative Class

14 and Collective members, regardless of location throughout the United States, including in California.

15     39.    QSI requires that Plaintiffs and putative Class and Collective members perform

16 substantial work off-the-clock. For example, QSI requires that Plaintiffs and putative Class and

17 Collective members don their personal protective equipment while they are off-the-clock. QSI requires

18 Plaintiffs and putative Class and Collective members to either don their personal protective equipment

19 and gather tools before they clock in for work, or after they clock out for their breaks.  Plaintiffs, like

20 other putative Class and Collective members, spent approximately 10 minutes putting on this personal

21 protective equipment prior to clocking in for work, or after they clock out for their breaks. As a result

22 of QSI's policies, Plaintiffs and putative Class and Collective members are not adequately compensated

23 for all hours worked at their regular rate or at the applicable overtime rates.

24     40.    QSI also requires Plaintiffs and putative Class and Collective members to perform

25 additional off-the-clock work.  QSI maintains an employee parking lot that Plaintiffs and putative Class

26 and Collective members must use to park their vehicles. Before clocking in for a work shift, Plaintiffs

27 and putative Class and Collective members are required to park in the specified parking lot, they then

28

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Chavez v. Stellar Management Group VII, LLC, et al.*

1    must walk to a security gate and wait in long lines to have their belongings inspected.  Once through

2    the security gate, they are required to walk to the facility to which they have been assigned and drop

3    off their personal belongings in a designated break room.  Plaintiffs and putative Class and Collective

4    members are not compensated for this time.

5    　　　　41.　　QSI also requires Plaintiffs and putative Class and Collective members to perform

6    substantial, additional off-the-clock work after their shifts have ended. After clocking out, QSI requires

7    Plaintiffs and putative Class and Collective members to walk to the security gate, to again wait in line

8    before having their belongings inspected, and then walk back to the parking lot, taking approximately

9    ten additional minutes to complete. They are also required to clean and sanitize their personal protective

10   equipment, which takes an additional several minutes to complete per day.  QSI did not pay Plaintiffs

11   or putative Class and Collective members for this additional work. In total, it takes at least an additional

12   twelve to fifteen minutes or longer for Plaintiffs to complete these post-shift duties per day.

13   　　　　42.　　QSI also fails to provide Plaintiffs and putative Class members with timely, legally

14   compliant meal periods and rest breaks. QSI requires Plaintiffs and putative Class and Collective

15   members to work during their meal periods and rest breaks. In addition, these breaks are not made

16   available within the times prescribed by statute and are interrupted.

17   　　　　43.　　QSI instructed the putative Class and Collective members, to take a paid rest break

18   immediately upon starting their shift. Immediately following the rest break, QSI then required the

19   putative Class and Collective members, to immediately take an unpaid "lunch."During the time that

20   putative Class and Collective members are required to take their rest break and lunch, QSI required that

21   they attend work-related meetings. Putative Class and Collective members who do not don their

22   personal protective equipment prior to clocking in are required to don their personal protective

23   equipment during these rest and meal breaks. Putative Class and Collective members are not

24   compensated for this time worked.

25   　　　　44.　　QSI also does not pay the required one hour of premium pay to Plaintiffs and other

26   putative Class members for each missed or non-compliant meal period and rest break. The putative

27   Class and Collective members are required to perform work off-the-clock and without pay during meal

28

1  and rest breaks.

2        45.     In addition to working during meal and rest breaks, QSI also required its employees to

3  work up to three hours off-the-clock and without compensation. Plaintiffs and putative Class and

4  Collective members are typically scheduled to work at least six hours a day, but in fact typically work

5  over eight hours a day.  Plaintiffs are informed, believe, and thereon allege that if the unpaid time spent

6  working through break periods, along with the off-the-clock work were factored in, Plaintiffs and

7  putative Class and Collective members would be eligible for overtime compensation under California

8  law because they typically work over eight hours.

9        46.     Plaintiffs and putative Collective members typically work at least 40 hours a week.

10 Plaintiffs are informed, believe, and thereon allege that if the unpaid time spent working through break

11 periods, along with the off-the-clock work were factored in, Plaintiffs and putative Collective members

12 would be eligible for overtime compensation under the FLSA because they typically work over 40

13 hours a week.

14       47.     QSI is aware that non-exempt hourly employees do not receive timely and compliant

15 meal and rest periods to which they are entitled and that it has, and continues, to deprive its hourly,

16 non-exempt employees of compensation for all time worked.  Plaintiffs are informed, believe, and

17 thereon allege that QSI commits minimum wage violations by failing to pay Plaintiffs and putative

18 Class missed break premium pay, requiring them to work off-the-clock and though breaks, and failing

19 to pay overtime, in conjunction with a nominal rate of pay at or just above the minimum wage. As a

20 result of QSI's policies and practices, Plaintiffs and the putative Class members are denied minimum

21 wage under California law for all hours worked.

22       48.     Plaintiffs are informed, believe, and thereon allege that QSI's policies and practices have

23 at all relevant times been similar for non-exempt, hourly employees, regardless of the location within

24 the United States, including in California.

25       49.     QSI's unlawful conduct has been widespread, repeated, and consistent throughout its

26 work locations in the United States, including in California.  QSI knew or should have known that its

27 policies and practices have been unlawful and unfair.

28

50.    QSI's conduct was willful, carried out in bad faith, and caused significant damages to non-exempt hourly employees in an amount to be determined at trial.

### <u>COLLECTIVE ALLEGATIONS UNDER THE FLSA</u>

51.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

52.    Plaintiff Slaughter brings the FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b) as to claims for failing to pay Plaintiff Slaughter and Collective members for all hours worked, including wages at the agreed rate and overtime compensation for all hours worked over 40 hours per week, liquidated damages, and attorneys' fees and costs under the FLSA.  The FLSA Collective that Plaintiff Slaughter seeks to represent is defined as follows:

> All current and former hourly, non-exempt employees of Stellar Management Group VII, LLC; Stellar Management Group, Inc. d/b/a QSI Quality Service Integrity; The Vincit Company, LLC d/b/a The Vincit Group and Vincit Enterprises in the United States during the time period three years prior to March 13, 2019, until the resolution of this action.

53.    Plaintiff Slaughter's claims for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 216(b) of the FLSA because Plaintiff's FLSA claims are similar to the claims of the Collective members.

54.    The Collective members are similarly situated, as they have substantially similar job duties and requirements and are subject to a common policy, practice, or plan that requires them to perform work without compensation in violation of the FLSA.

55.    Plaintiff Slaughter is representative of the Collective members and is acting on behalf of their interests, as well as Plaintiff Slaughter's own interests, in bringing this action.

56.    Plaintiff Slaughter will fairly and adequately represent and protect the interests of Collective members.   Plaintiff Slaughter has retained counsel competent and experienced in employment class action and collective action litigation.

57.    The similarly situated Collective members are known to QSI, are readily identifiable, and may be located through QSI's records.  These similarly situated employees may readily be notified of

1   this action, and allowed to "opt-in" to this case pursuant to 29 U.S.C. § 216(b) for the purpose of

2   collectively adjudicating their claims for unpaid wages, liquidated damages (or, alternatively, interest),

3   and attorneys' fees and costs under the FLSA.

4                    **CLASS ALLEGATIONS UNDER CALIFORNIA LAW**

5          58.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth

6   herein.

7          59.    Plaintiffs bring this case as a class action on behalf of themselves and all others similarly

8   situated pursuant to Federal Rule of Civil Procedure 23.  The putative Class that Plaintiffs seek to

9   represent is defined as follows:

10              All current and former hourly, non-exempt employees of Stellar
                Management Group VII, LLC; Stellar Management Group, Inc. d/b/a QSI
11              Quality Service Integrity; The Vincit Company, LLC d/b/a The Vincit
                Group and Vincit Enterprises in California during the time period four
12              years prior to March 13, 2019, until the resolution of this action

13         60.    This action has been brought and may properly be maintained as a class action under

14  Rule 23 because there is a well-defined community of interest in the litigation and the putative class is

15  easily ascertainable.

16         1.  **Numerosity**: The potential members of the putative Class as defined are so numerous

17              that joinder of all the members of the putative Class is impracticable.

18         2.  **Commonality**: There are questions of law and fact common to Plaintiffs and the

19              putative Class that predominate over any questions affecting only individual

20              members of the putative Class.  These common questions of law and fact include, but

21              are not limited to:

22              i.  Whether QSI fails to compensate putative Class members for all hours

23                  worked, including at minimum wage and as overtime compensation, in

24                  violation of the Labor Code and Wage Orders;

25              ii. Whether QSI's failure to compensate putative Class members for all hours

26                  worked, including at minimum wage and as overtime compensation, violates

27                  Business and Professions Code §§ 17200 *et seq*.;

28

iii.  Whether QSI has a policy and/or practice of requiring putative Class members to suffer and permit to work for Defendant off-the-clock and without compensation;

iv.  Whether QSI fails to pay putative Class members minimum wage for all hours worked, in violation of the Labor Code and Wage Orders;

v.  Whether QSI's failure to pay putative Class members minimum wage for all hours worked, violates Business and Professions Code §§ 17200 *et seq.*;

vi.  Whether QSI fails to properly pay overtime compensation, at either one and one-half times or double the regular rate of pay, to putative Class members in violation of the Labor Code and Wage Orders;

vii.  Whether QSI's failure to properly pay overtime compensation, at either one and one-half times or double the regular rate of pay, to putative Class members violates Business and Professions Code §§ 17200 *et seq.*;

viii.  Whether QSI fails to authorize and permit, make available, and/or provide putative Class members with compliant meal and rest periods to which they are entitled in violation of the Labor Code and Wage Orders;

ix.  Whether QSI's failure to authorize and permit, make available, and/or provide putative Class members with timely meal and rest periods to which they are entitled violates Business and Professions Code §§ 17200 *et seq.*;

x.  Whether QSI fails to provide putative Class members with timely, accurate itemized wage statements in violation of the Labor Code and Wage Orders;

xi.  Whether QSI's failure to provide putative Class members with timely, accurate itemized wage statements violates Business and Professions Code §§ 17200 *et seq.*;

xii.  Whether QSI fails to timely pay putative Class members for all wages owed upon termination of employment in violation of the Labor Code;

xiii.  Whether QSI's failure to timely pay putative Class members for all wages owed upon termination of employment violates Business and Professions Code §§ 17200 *et seq*.; and

xiv.  The proper formula for calculating restitution, damages and penalties owed to Plaintiffs and the Class as alleged herein.

3.  **Typicality**:  Plaintiffs' claims are typical of the claims of the Class.  QSI's common course of conduct in violation of law as alleged herein has caused Plaintiffs and putative Class members to sustain the same or similar injuries and damages. Plaintiffs' claims are thereby representative of and co-extensive with the claims of the Class.

4.  **Adequacy of Representation**: Plaintiffs are members of the Class, do not have any conflicts of interest with other putative Class members, and will prosecute the case vigorously on behalf of the Class.  Counsel representing Plaintiffs is competent and experienced in litigating large employment class actions, including wage and hour classes.  Plaintiffs will fairly and adequately represent and protect the interests of the Class members.

5.  **Superiority of Class Action**: A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all putative Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.  Each putative Class member has been damaged and is entitled to recovery by reason of QSI's illegal policies and/or practices.  Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.  In the alternative, the Class may be certified because the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying

adjudication with respect to individual members of the Class, and, in turn, would

establish incompatible standards of conduct for QSI.

**FIRST CAUSE OF ACTION**
**Violation of the Fair Labor Standards Act**
**29 U.S.C. §§ 201, et seq.**
**(Against Defendants – on Behalf of the Collective)**

61.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

62.     The FLSA requires that covered employees receive compensation for all hours worked and overtime compensation not less than one and one-half times the regular rate of pay for all hours worked in excess of forty hours in a work week.  29 U.S.C. § 207(a)(1).

63.     At all times material herein, Plaintiff Slaughter and the Collective are covered employees entitled to the rights, protections, and benefits provided under the FLSA. 29 U.S.C. §§ 203(e) and 207(a).

64.     Defendants are covered employers required to comply with the FLSA's mandates.

65.     Defendants have violated the FLSA with respect to Plaintiff Slaughter and the Collective, by, *inter alia*, failing to compensate Plaintiff Slaughter and the Collective for all hours worked and, with respect to such hours, failing to pay the legally mandated overtime premium for such work and/or minimum wage for those Collective members who earned at or near the federal minimum wage.

66.     Plaintiff Slaughter and the Collective are victims of a uniform and company-wide compensation policy that has been applied to current and former non-exempt, hourly employees of Defendants, working throughout the United States.

67.     Plaintiff Slaughter and the Collective are entitled to damages equal to the mandated pay, including overtime premium pay, as well as minimum wage and straight time pay when applicable, within the three years preceding the filing of the complaint, plus periods of equitable tolling, because Defendants have acted willfully and knew or showed reckless disregard for whether the alleged conduct was prohibited by the FLSA.

68.     Defendants have acted neither in good faith nor with reasonable grounds to believe that

their actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiff Slaughter and the Collective are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay and/or prejudgment interest at the applicable rate.  29 U.S.C. § 216(b).

69.    Pay, including minimum wage, straight time, and overtime compensation, has been unlawfully withheld by Defendants from Plaintiff Slaughter and the Collective as a result of the QSI's violations of the FLSA.  Accordingly, Defendants are liable for unpaid wages, together with an amount equal as liquidated damages, attorneys' fees, and costs of this action.

70.    Wherefore, Plaintiff Slaughter and the Collective request relief as hereinafter provided.

**SECOND CAUSE OF ACTION**
**Failure to Pay for All Hours Worked Pursuant to Labor Code §§ 201, 202, 204, and 221-223**
**(Against Defendants – on behalf of the Class)**

71.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

72.    Labor Code § 200(a) defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."

73.    Labor Code §§ 201 and 202 require an employer to pay all wages earned but unpaid immediately upon the involuntary discharge of an employee or within seventy-two (72) hours of an employee's voluntary termination of employment.

74.    Labor Code § 204 provides that employers must compensate employees for all hours worked "twice during each calendar month, on days designated in advance by the employer as the regular paydays."

75.    Labor Code §§ 221-223 prohibit employers from withholding and deducting wages, or otherwise artificially lowering the wage scale of an employee.

76.    Labor Code § 1198 makes it unlawful for employers to employ employees under conditions that violate the Wage Orders.

77.    IWC Wage Order 8-2001(2)(G) defines hours worked as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or

1    permitted to work, whether or not required to do so."

2        78.    Defendants willfully engaged in and continues to engage in a policy and practice of not

3    compensating Plaintiffs and putative Class members for all hours worked or spent in their control.

4    Defendants require Plaintiffs and the Class to work off-the-clock without compensation.  In other

5    words, Plaintiffs and the Class are forced to perform work for the benefit of Defendants without

6    compensation.

7        79.    Defendants regularly require Plaintiffs and the putative Class members to work shifts of

8    eight or more hours.  Defendants intentionally and willfully require Plaintiffs and putative Class

9    members to complete additional work off-the-clock, resulting in actually-completed work in excess of

10   eight hours per day.  Plaintiffs and putative Class members are required to complete multiple pre- and

11   post-shift activities off-the-clock, including traveling to and waiting in long lines to be checked at

12   security gates before and after their paid shifts, donning and doffing their personal protective

13   equipment, and sanitizing and washing their personal protective equipment. In addition, Plaintiffs and

14   putative Class members routinely work through their meal period and are not compensated for that

15   work.  For example, Defendants require Plaintiffs and putative Class members to attend work meetings

16   during their meal break and to either don their personal protection equipment during their rest breaks

17   and meal periods, or to clock in only after they have donned their personal protection equipment.

18   Defendants also do not pay the required one hour of premium pay to Plaintiffs and putative Class

19   members for each missed or non-compliant meal period and rest break. Defendants do not pay Plaintiffs

20   or the putative Class members for this additional work time.

21       80.    In violation of California law, Defendants knowingly and willfully refuse to perform their

22   obligations to provide Plaintiffs and the putative Class with compensation for all time worked.

23   Defendants regularly fail to track the time Plaintiffs and the putative Class actually work or to

24   compensate them for hours worked.  Therefore, Defendants committed, and continues to commit, the

25   acts alleged herein knowingly and willfully, and in conscious disregard of the Plaintiffs and the putative

26   Class members' rights.  Plaintiffs and the putative Class are thus entitled to recover nominal, actual,

27   and compensatory damages, plus interest, attorneys' fees, expenses, and costs of suit.

28

81.     As a proximate result of the aforementioned violations, Plaintiffs and the putative Class have been damaged in an amount according to proof at time of trial.

82.     Wherefore, Plaintiffs and the putative Class request relief as hereinafter provided.

### THIRD CAUSE OF ACTION
**Failure to Pay Minimum Wages Pursuant to California Labor Code §§ 1182.11, 1182.12, 1194, 1197, and 1197.1**
**(Against Defendant – on Behalf of the Class)**

83.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

84.     During the applicable statutory period, California Labor Code §§1182.11, 1182.12 and 1197, and the Minimum Wage Order were in full force and effect and required that Defendants' hourly employees receive the minimum wage for all hours worked irrespective of whether nominally paid on a piece rate, or any other bases, at the rate of ten dollars and fifty cents ($10.50) per hour commencing January 1, 2017, and at the rate of eleven dollars ($11.00) per hour commencing January 1, 2018.

85.     "Hours worked" is the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so.

86.     California Labor Code §1194 states:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

87.     Labor Code §1194.2 provides that, in any action under Section 1194 to recover wages because of the payment of a wage less than minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

88.     Defendants have maintained policies and procedures which created a working environment where hourly employees are routinely compensated at a rate that is less than the statutory

1    minimum wage. Plaintiffs and members of the putative Class frequently work time off-the-clock during

2    rest and meal breaks, including time spent donning and doffing safety equipment, and go

3    uncompensated for this time. When the daily pay for these workers is divided by the actual hours that

4    they work, and required missed break premiums and overtime are factored in, the effective hourly rate

5    of pay falls below the minimum wage.

6         89.    In violation of California law, and as a direct and proximate result of the unlawful acts

7    and/or omissions of Defendants, Plaintiffs and putative Class members have been deprived of minimum

8    wages in an amount to be determined at trial, Plaintiffs and putative Class members are thus entitled to

9    a recovery of such amount, plus liquidated damages, plus interest thereon, attorneys' fees, and costs of

10   suit pursuant to Labor Code §§ 1194, 1194.2 and 1197.1.

11        90.    As a proximate result of the aforementioned violations, Plaintiffs and the putative Class

12   have been damaged in an amount according to proof at time of trial.

13        91.    Wherefore, Plaintiffs and the putative Class request relief as hereinafter provided.

**FOURTH CAUSE OF ACTION**
**Failure to Pay Overtime Wages Pursuant to Labor Code § 510**
**(Against Defendant – on Behalf of the Class)**

16        92.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth

17   herein.

18        93.    Labor Code § 510 provides as follows:

19             Eight hours of labor constitutes a day's work. Any work in excess of eight
20             hours in one workday and any work in excess of 40 hours in any one
               workweek and the first eight hours worked on the seventh day of work in
21             any one workweek shall be compensated at the rate of no less than one
               and one-half times the regular rate of pay for an employee. Any work in
22             excess of 12 hours in one day shall be compensated at the rate of no less
               than twice the regular rate of pay for an employee.

23        94.    IWC Wage Order 8-2001(3)(A)(1), & (3) states that employees:

24             …shall not be employed more than eight (8) hours in any workday or
25             more than 40 hours in any workweek unless the employee receives one
               and one-half (1 ½) times such employee's regular rate of pay for all hours
26             worked over 40 hours in the workweek. Eight (8) hours of labor
               constitutes a day's work. Employment beyond eight (8) hours in any
27             workday or more than six (6) days in any workweek is permissible
               provided the employee is compensated for such overtime at not less than

28

… [o]ne and one-half (1½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek….

95.    Labor Code § 1194(a) provides as follows:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

96.    Labor Code § 200 defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." All such wages are subject to California's overtime requirements, including those set forth above.

97.    Defendants regularly require Plaintiffs and putative Class members to work in excess of eight hours per day and/or forty hours per week, but do not compensate them at an overtime rate for this work.

98.    Plaintiffs and putative Class members have worked overtime hours for Defendants without being paid overtime premiums in violation of the Labor Code, applicable IWC Wage Orders, and other applicable laws.

99.    Defendants have knowingly and willfully refused to perform their obligation to compensate Plaintiffs and the putative Class members for all premium wages for overtime work.  As a proximate result of the aforementioned violations, Defendants have damaged Plaintiffs and the putative Class members in amounts to be determined according to proof at time of trial.

100.    Defendants are liable to Plaintiffs and the Class alleged herein for the unpaid overtime and civil penalties, with interest thereon.  Furthermore, Plaintiffs are entitled to an award of attorneys' fees and costs as set forth below.

101.    Wherefore, Plaintiffs and the Class request relief as hereinafter provided.

**FIFTH CAUSE OF ACTION**
**Failure to Authorize and Permit and/or Make Available Meal and Rest Periods**
**Pursuant to Labor Code §§ 226.7 and 512**
**(Against Defendant – on Behalf of the Class)**

102.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

103.    Defendants routinely do not make compliant meal periods available to Plaintiffs and putative Class members.  Despite long work days regularly lasting in excess of eight hours, Plaintiffs and putative Class members are often unable to take a compliant meal break, are required to attend meetings during their meal breaks and/or put on their personal protective equipment, and are frequently interrupted during their meal breaks.

104.    Plaintiffs and putative Class members are not paid one hour of premium pay for the missed or non-compliant breaks.  Plaintiffs and putative Class members are routinely required to work through their meal period and are not compensated for that work.  For example, Defendants require Plaintiffs and putative Class members to attend work meetings during their meal break and to either don their personal protection equipment during their rest breaks and meal periods, or to clock in only after they have donned their personal protection equipment.  Defendants do not pay Plaintiffs or putative Class members for this additional work time.

105.    Similar to meal periods, Defendants regularly fail to make rest periods available to Plaintiffs and putative Class members.  Plaintiffs' and putative Class members' schedules regularly prevent them from taking rest periods throughout the day.  When available, if ever, they are often not compliant.  Instead, they are generally untimely, short, or interrupted. Plaintiffs and putative Class members do not receive premium pay for their noncompliant or missed breaks as required by California law.

106.    Labor Code §§ 226.7 and 512 and the applicable Wage Orders require Defendants to authorize and permit meal and rest periods to their employees.  Labor Code §§ 226.7 and 512 and the Wage Orders prohibit employers from employing an employee for more than five hours without a meal period of not less than thirty minutes, and from employing an employee more than ten hours per day

1  without providing the employee with a second meal period of not less than thirty minutes.  Labor Code

2  § 226.7 and the applicable Wage Orders also require employers to authorize and permit employees to

3  take ten minutes of net rest time per four hours or major fraction thereof of work, and to pay employees

4  their full wages during those rest periods.  Unless the employee is relieved of all duty during the thirty-

5  minute meal period and ten-minute rest period, the employee is considered "on duty" and the meal or

6  rest period is counted as time worked under the applicable Wage Orders.

7          107.    Under Labor Code § 226.7(b) and the applicable Wage Orders, an employer who fails to

8  authorize, permit, and/or make available a required meal period must, as compensation, pay the

9  employee one hour of pay at the employee's regular rate of compensation for each workday that the

10  meal period was not authorized and permitted.  Similarly, an employer must pay an employee denied a

11  required rest period one hour of pay at the employee's regular rate of compensation for each workday

12  that the rest period was not authorized and permitted and/or not made available.

13          108.    Despite these requirements, Defendants have knowingly and willfully refused to perform

14  their obligations to authorize and permit and/or make available to Plaintiffs and the Class the ability to

15  take the off-duty meal and rest periods to which they are entitled.  Defendants have also failed to pay

16  Plaintiffs and the Class one hour of pay for each off-duty meal and/or rest periods that they are denied.

17  Defendants' conduct described herein violates Labor Code §§ 226.7 and 512.  Therefore, pursuant to

18  Labor Code § 226.7(c), Plaintiffs and the putative Class are entitled to compensation for the failure to

19  authorize and permit and/or make available meal and rest periods, plus interest, attorneys' fees,

20  expenses and costs of suit.

21          109.    As a proximate result of the aforementioned violations, Plaintiffs and the putative Class

22  have been damaged in an amount according to proof at time of trial.

23          110.    Wherefore, Plaintiffs and the putative Class request relief as hereinafter provided.

24                              **SIXTH CAUSE OF ACTION**
   **Failure to Provide Accurate Itemized Wage Statements Pursuant to Labor Code § 226**
25                      **(Against Defendant – on Behalf of the Class)**

26          111.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth

27  herein.

28

---

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Chavez v. Stellar Management Group VII, LLC, et al.*

112.    Defendants do not provide Plaintiffs and putative Class members with accurate itemized wage statements as required by California law.

113.    Labor Code § 226(a) provides in part:

> An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer … and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee … The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

114.    The IWC Wage Orders also establishes this requirement.  (*See* IWC Wage Order 16-2001(6).)

115.    Labor Code § 226(e)(1) provides:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

116.    Plaintiffs seek to recover the greater of all actual damages or fifty dollars for the initial pay period in which a violation occurs and one hundred dollars per employee for each violation in a subsequent pay period, costs and attorneys' fees under this section.

117.    Defendants do not provide timely, accurate itemized wage statements to Plaintiffs and putative Class members in accordance with Labor Code § 226(a) and the IWC Wage Orders.  The wage statements Defendants provide their employees, including Plaintiffs and putative Class members, do

1  not accurately reflect the actual hours worked, actual gross wages earned, or actual net wages earned.

2      118.    Defendants are liable to Plaintiffs and the putative Class alleged herein for the amounts

3  described above in addition to the civil penalties set forth below, with interest thereon.  Furthermore,

4  Plaintiffs are entitled to an award of attorneys' fees and costs as set forth below, pursuant to Labor

5  Code § 226(e).

6      119.    Wherefore, Plaintiffs and the putative Class request relief as hereinafter provided.

7  ### SEVENTH CAUSE OF ACTION
**Waiting Time Penalties Pursuant to Labor Code §§ 201-203**
8  **(Against Defendant – on Behalf of the Class)**

9      120.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth

10  herein.

11      121.    Defendants do not provide putative Class members with their wages when due under

12  California law after their employment with Defendants ends.

13      122.    Labor Code § 201 provides that: "If an employer discharges an employee, the wages

14  earned and unpaid at the time of discharge are due and payable immediately."

15      123.    Labor Code § 202(a) provides in part:

16      If an employee not having a written contract for a definite period quits his
       or her employment, his or her wages shall become due and payable not
17      later than 72 hours thereafter, unless the employee has given 72 hours
       previous notice of his or her intention to quit, in which case the employee
18      is entitled to his or her wages at the time of quitting.

19      124.    Labor Code § 203 provides, in relevant part:

20      If an employer willfully fails to pay, without abatement or reduction, in
       accordance with Sections 201, 201.3, 201.5, 201.9, 202, and 205.5, any
21      wages of an employee who is discharged or who quits, the wages of the
       employee shall continue as a penalty from the due date thereof at the same
22      rate until paid or until an action therefor is commenced; but the wages
       shall not continue for more than 30 days.
23

24      125.    Some of the putative Class members left their employment with Defendants during the

25  statutory period, at which time Defendants owed them unpaid wages.  These earned, but unpaid, wages

26  derive from time spent working for the benefit of Defendants, which went unrecorded and/or

27  uncompensated.

28

126.    Defendants willfully refused and continues to refuse to pay putative Class members all the wages due and owing to them, in the form of uncompensated off-the-clock time, minimum wage, overtime, and meal and rest period premium pay upon the end of their employment as a result of Defendants' willful failure to provide Plaintiffs and the putative Class members with payment for all hours worked, overtime, and meal and rest breaks.  As a result of Defendants' actions, Plaintiffs and putative Class members have suffered and continue to suffer substantial losses, including lost earnings, and interest.

127.    Defendants' willful failure to pay Plaintiffs and putative Class members the wages due and owing them constitutes a violation of Labor Code §§ 201-202.  As a result, Defendants are liable to Plaintiffs and proposed Class members for all penalties owing pursuant to Labor Code §§ 201-203.

128.    In addition, Labor Code § 203 provides that an employee's wages will continue as a penalty up to thirty days from the time the wages were due.  Therefore, the Plaintiffs and putative Class members are entitled to penalties pursuant to Labor Code § 203, plus interest.

129.    Wherefore, Plaintiffs and the Class request relief as hereinafter provided.

**EIGHTH CAUSE OF ACTION**
**Violation of California Business and Professions Code §§ 17200 *et seq.***
**(Against Defendant – on Behalf of the Class)**

130.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

131.    The UCL prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

132.    Business and Professions Code § 17204 allows a person injured by the unfair business acts or practices to prosecute a civil action for violation of the UCL.

133.    Labor Code § 90.5(a) states it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

134.    Beginning at an exact date unknown to Plaintiffs, but at least since the date four years prior to the filing of this suit, Defendants have committed acts of unfair competition as defined by the UCL, by engaging in the unlawful, unfair, and fraudulent business acts and practices described in this Complaint, including, but not limited to:

1.    violations of Labor Code § 1194 and IWC Wage Order 8-2001 pertaining to payment of wages, including minimum wage, for all hours worked;

2.    violations of Labor Code § 510 and Wage Order 8-2001 pertaining to overtime;

3.    violations of Labor Code §§ 226.7 and 512 and Wage Order 8-2001 pertaining to meal and rest breaks;

4.    violations of Labor Code § 226 regarding accurate, timely itemized wage statements; and

5.    violations of Labor Code §§ 201-203.

135.    The violations of these laws and regulations, as well as of the fundamental California public policies protecting wages, serve as unlawful predicate acts and practices for purposes of Business and Professions Code §§ 17200 *et seq*.

136.    The acts and practices described above constitute unfair, unlawful, and fraudulent business practices, and unfair competition, within the meaning of Business and Professions Code §§ 17200 *et seq*. Among other things, the acts and practices have taken from Plaintiffs and the Class wages rightfully earned by them, while enabling Defendants to gain an unfair competitive advantage over law-abiding employers and competitors.

137.    Business and Professions Code § 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition. Injunctive relief is necessary and appropriate to prevent Defendants from repeating the unlawful, unfair, and fraudulent business acts and practices alleged above.

138.    As a direct and proximate result of the aforementioned acts and practices, Plaintiffs and the Class members have suffered a loss of money and property, in the form of unpaid wages which are due and payable to them.

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Chavez v. Stellar Management Group VII, LLC, et al.*

139.    Business and Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition. Plaintiffs and the Class are entitled to restitution pursuant to Business and Professions Code § 17203 for all wages and payments unlawfully withheld from employees during the four-year period prior to the filing of this Complaint.  Plaintiffs' success in this action will enforce important rights affecting the public interest and in that regard Plaintiffs sues on behalf of themselves as well as others similarly situated.  Plaintiffs and putative Class members seek and are entitled to unpaid wages, declaratory and injunctive relief, and all other equitable remedies owing to them.

140.    Plaintiffs herein takes upon himself enforcement of these laws and lawful claims.  There is a financial burden involved in pursuing this action, the action is seeking to vindicate a public right, and it would be against the interests of justice to penalize Plaintiffs by forcing them to pay attorneys' fees from the recovery in this action.  Attorneys' fees are appropriate pursuant to Code of Civil Procedure §1021.5 and otherwise.

141.    Wherefore, Plaintiffs and the putative Class request relief as hereinafter provided

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

1. Damages and restitution according to proof at trial for all unpaid wages and other injuries, as provided by the FLSA and California Labor Code;

2. For a declaratory judgment that Defendants have violated and continue to violate the FLSA and California Labor Code and public policy as alleged herein;

3. For a declaratory judgment that Defendants have violated California Business and Professions Code §§ 17200 *et seq.*, as a result of the aforementioned violations of the California Labor Code and of California public policy protecting wages;

4. For preliminary, permanent, and mandatory injunctive relief prohibiting Defendants, their officers, agents, and all those acting in concert with them from committing in the future those violations of law herein alleged;

5. For an equitable accounting to identify, locate, and restore to all current and former

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Chavez v. Stellar Management Group VII, LLC, et al.*

employees the wages they are due, with interest thereon;

6.  For an order awarding Plaintiff Slaughter and the Collective members compensatory damages, including lost wages, earnings, liquidated damages, and other employee benefits, restitution, recovery of all money, actual damages, and all other sums of money owed to Plaintiff Slaughter and Collective members, together with interest on these amounts, according to proof;

7.  For an order awarding Plaintiffs and the Class members compensatory damages, including lost wages, earnings, liquidated damages, and other employee benefits, restitution, recovery of all money, actual damages, and all other sums of money owed to Plaintiffs and Class members, together with interest on these amounts, according to proof;

8.  For an order awarding Plaintiff Slaughter and the Collective members civil penalties pursuant to the FLSA provisions cited herein, with interest thereon;

9.  For an order awarding Plaintiffs and the Class members civil penalties pursuant to the California Labor Code provisions cited herein, with interest thereon;

10. For an award of reasonable attorneys' fees as provided by the California Labor Code; California Code of Civil Procedure § 1021.5; the FLSA; and/or other applicable law;

11. For all costs of suit;

12. For interest on any damages and/or penalties awarded, as provided by applicable law; and

13. For such other and further relief as this Court deems just and proper.

Date: May 21, 2020                          Respectfully Submitted,


                                            _/s/ Carolyn H. Cottrell_____
                                            Carolyn H. Cottrell (SBN 166977)
                                            Ori Edelstein (SBN 268145)
                                            Michelle S. Lim (SBN 315691)
                                            SCHNEIDER WALLACE

COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile:  (415) 421-7105

Attorneys for Plaintiff, and the Putative Class
and Collective

FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Chavez v. Stellar Management Group VII, LLC, et al.*

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demands a jury trial on all claims and issues for which Plaintiffs are entitled to a jury.


Date: May 21, 2020                          Respectfully Submitted,


*/s/ Carolyn H. Cottrell*
Carolyn H. Cottrell (SBN 166977)
Ori Edelstein (SBN 268145)
Michelle S. Lim (SBN 315691)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile:  (415) 421-7105

Attorneys for Plaintiff, and the Putative Class and Collective