Carolyn H. Cottrell (SBN 166977)
Ori Edelstein (SBN 268145)
Michelle S. Lim (SBN 315691)
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
ccottrell@schneiderwallace.com
oedelstein@schneiderwallace.com
mlim@schneiderwallace.com

*Attorneys for Plaintiffs and the*
*Settlement Class and Collective*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CHAVEZ and VINCENT SLAUGHTER, on behalf of themselves and all others similarly situated, | Case No.: 3:19-cv-01353-JCS |
| | Hon. Joseph C. Spero |
| Plaintiffs, | |
| vs. | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| STELLAR MANAGEMENT GROUP VII, LLC; STELLAR MANAGEMENT GROUP, INC. d/b/a QSI QUALITY SERVICE INTEGRITY; THE VINCIT COMPANY, LLC d/b/a THE VINCIT GROUP and VINCIT ENTERPRISES, | Date: March 18, 2022 |
| | Time: 9:30 a.m. |
| | Courtroom: G, 15th Floor |
| Defendants. | |
| | Filed: March 13, 2019 |
| | Trial Date: None |

**TO THE HONORABLE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on March 18, 2022 at 9:30 a.m., by remote videoconference via the online platform Zoom, https://cand-uscourts.zoomgov.com/j/1619260804?pwd=RE5qWDhGOTdWWTZUOFlOKzhNc3pjZz09, Webinar ID: 161 926 0804, Password: 050855, Dial in: US: +1 (669) 254-5252 or +1 (646) 828-7666, International numbers: https://cand-uscourts.zoomgov.com/u/advFLxrTkx, before Magistrate Judge Joseph C. Spero of the United States District Court, Northern District of California, Plaintiffs David Chavez and Vincent Slaughter ("Plaintiffs") move the Court for final approval of the Class Action Settlement Agreement and Release, as amended (the "Settlement Agreement" or the "Settlement").[1] The Settlement globally resolves all of the claims in these actions on a class and collective basis. In particular, Plaintiffs move for orders:

(1)     Finally approving the Settlement as to the California Class;

(2)     Finally certifying the California Class for settlement purposes;

(3)     Finally appointing and approving Plaintiffs Chavez and Slaughter as Class Representatives;

(4)     Finally appointing and approving Schneider Wallace Cottrell Konecky LLP as Class and Collective Counsel;

(5)     Finally approving the PAGA Settlement Amount;

(6)     Finally approving payment to Kroll Settlement Administration LLC f/k/a Heffler Claims Group ("Kroll") in the amount of $81,361.00 for its services as the Settlement Administrator for the Class and Collective;

(7)     Directing Kroll to make the payments required under the Settlement, including the Settlement Awards to Class and Collective Members and all other payments;

(8)     Entering a final judgment with the terms of the Settlement; and

(9)     Finally approving the Implementation Schedule:

---

[1] The "Settlement Agreement" or "Settlement" or refers to the Class Action Settlement Agreement and Release, including its First, Second, and Third Amendments, filed at ECF 134-2, 141-1, 147-1, 153-1.

| | |
|---|---|
| Effective Date | The latest of the following dates: (i) if there are one or more objections to the settlement that are not subsequently withdrawn, then the date after the expiration of time for filing a notice of appeal of the Court's Final Approval Order, assuming no appeal or request for review has been filed; (ii) if there is a timely objection and appeal by one or more objectors, then the date after such appeal or appeals are terminated (including any requests for rehearing) resulting in the final judicial approval of the Settlement; or (iii) if there are no timely objections to the settlement, or if one or more objections were filed but subsequently withdrawn before the date of Final Approval, then the first business day after the Court's order granting Final Approval of the Settlement is entered |
| Deadline for Kroll to calculate the employer share of taxes and provide Defendants with the total amount of Defendants' Payroll Taxes | Within 5 business days after final Settlement Award calculations are approved |
| Deadline for Kroll to make payments under the Settlement to Participating Individuals, the California Labor Workforce Development Agency ("LWDA"), Class Representatives, Plaintiffs' counsel, and itself | Within 30 days after the Effective Date or as soon as reasonably practicable |
| Deadline for Kroll to send a reminder letter via U.S. mail and, if applicable, email to those Participating Individuals that have not cashed their settlement check | 90 days before the check-cashing deadline |
| Deadline for Kroll to place a call to Participating Individuals that have not cashed their settlement check, to promptly attempt to obtain a valid mailing addresses for such individuals, and to send second checks to such individuals | 60 days before the check-cashing deadline |
| Check-cashing deadline | 180 days after issuance |
| Deadline for Kroll to tender uncashed check funds to cy pres recipient Legal Aid at Work or redistribute such uncashed funds to Participating Individuals who cashed their Settlement Award checks | As soon as practicable after check-cashing deadline |
| Deadline for Kroll to provide written certification of completion of administration of the Settlement to counsel for all Parties and the Court | Within 21 business days after the distribution of any uncashed funds |

Plaintiffs bring this Motion pursuant to Federal Rule of Civil Procedure 23(e). The Motion is based on this notice, the following Memorandum of Points and Authorities, the Declaration of

Carolyn Hunt Cottrell, the Declaration of Scott M. Fenwick, and all other records, pleadings, and papers on file in the action and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiffs also submit a Proposed Order Granting Final Approval of Class and Collective Action Settlement and a Proposed Judgment with their moving papers.

Date: February 11, 2022

Respectfully Submitted,

*/s/ Carolyn H. Cottrell*
Carolyn H. Cottrell
Ori Edelstein
Michelle S. Lim
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile:  (415) 421-7105

*Attorneys for Plaintiffs and the Settlement Class*
*and Collective*

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................... 1

II.   RELEVANT BACKGROUND AND PROCEDURAL HISTORY ........................................ 2

    A.  Notice of Settlement ........................................................................................ 2

    B.  Final Approval of Settlement ........................................................................... 4

III.  TERMS OF THE SETTLEMENT ...................................................................................... 4

    A.  Basic Terms and Value of the Settlement ...................................................... 4

    B.  Class and Collective Definitions ...................................................................... 7

    C.  Allocation and Awards ..................................................................................... 8

    D.  Scope of Release ............................................................................................ 10

IV.   ARGUMENT ................................................................................................................. 11

    A.  Ninth Circuit Precedent Favors and Encourages Class Settlements ............... 11

    B.  The Settlement Should be Finally Approved Because it is Fair, Reasonable, and
       Adequate ......................................................................................................... 13

       1.  The Settlement Provides Substantial, Certain Benefits and Avoids the
          Risk, Cost, Delay and Burden of Further Litigation. .................................... 14

       2.  The Settlement Was Reached Only After the Parties Engaged in Substantial
          Investigation and Analysis of the Legal Issues. ........................................... 15

       3.  The Settlement is the Product of Informed, Non-collusive, and Arm's-length
          Negotiations Between Experienced Counsel. .............................................. 15

       4.  Further Litigation Would Involve Risk, Expense, Delay, and Burden on Class
          Members. .................................................................................................... 16

       5.  The Distribution of the Settlement Proceeds is Equitable and Tailored to the
          Respective Claims of the Class and Collective. ............................................ 18

       6.  Class Members Approve of the Settlement. ................................................ 19

i

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT
*Chavez, et al. v. Stellar Management Group VII, LLC, et al.*, Case No. 3:19-cv-01353-JCS

C.  The Best Practicable Notice Was Provided To The Class Members In Accordance With The Process Approved By The Court. ................................................ 19

D.  The Class Representative Enhancement Payments and Attorneys' Fees and Costs Are Reasonable ................................................................................ 20

E.  The Court Should Finally Certify the Class ....................................................... 21

    1.  The Class is Numerous and Ascertainable ................................................ 21

    2.  Plaintiffs' Claims Raise Common Issues of Fact or Law. ......................... 21

    3.  Plaintiff's Claims are Typical of the Claims of the Class. ........................ 22

    4.  Plaintiffs and Class Counsel will Adequately Represent the Class. .......... 23

    5.  The Rule 23(b)(3) Requirements for Class Certification are also Met. .................... 23

V.  CONCLUSION ............................................................................................................ 25

ii

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT
*Chavez, et al. v. Stellar Management Group VII, LLC, et al.*, Case No. 3:19-cv-01353-JCS

# TABLE OF AUTHORITIES

## CASES

*Amchem Prod., Inc. v. Windsor*
   521 U.S. 591 (1997)................................................................................24

*Balderas v. Massage Envy Franchising, LLP*
   2014 WL 3610945 (N.D. Cal. July 21, 2014).......................................14

*Benton v. Telecom Network Specialists, Inc.*
   220 Cal.App.4th 701 (Cal. Ct. App. 2014)...........................................24

*Boyd v. Bechtel Corp.*
   485 F.Supp. 610 (N.D. Cal. 1979)........................................................15

*Carter v. Anderson Merchandisers, LP*
   No. EDCV 08-0025-VAP OPX, 2010 WL 1946784 (C.D. Cal. May 11, 2010)..........................16

*Churchill Village, LLC. v. Gen. Elec.*
   361 F.3d 566 (9th Cir. 2004) ................................................................13

*Cody v. Hillard*
   88 F.Supp.2d 1049 (D.S.D. 2000) .......................................................19

*Eddings v. Health Net, Inc.*
   No. CV 10-1744-JST RZX, 2013 WL 3013867 (C.D. Cal. June 13, 2013)................................16

*Franklin v. Kaypro Corp.*
   884 F.2d 1222 (9th Cir. 1989) ..............................................................12

*Fry v. Hayt, Hayt & Landau*
   198 F.R.D. 461 (E.D. Pa. 2000).................................................21, 22, 23

*Grunin v. Int'l House of Pancakes*
   513 F.2d 114 (8th Cir. 1975) ................................................................20

*Guifi Li v. A Perfect Day Franchise Inc.*,
   2012 WL 2236752 (N.D. Cal. 2012) ......................................................6

*Guilbaud v. Sprint Nextel Corp.*
   No. 3:13-CV-04357-VC, 2016 WL 7826649 (N.D. Cal. Apr. 15, 2016)...................................13

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998) ...........................................................................passim

*Haro v. City of Los Angeles*,
745 F.3d 1249 (9th Cir. 2014) .....................................................................................6

*Holmes v. Continental Can Co.*
706 F.2d 1144 (11th Cir. 1983) ..................................................................................18

*Ikonen v. Hartz Mountain Corp.*
122 F.R.D. 258 (S.D. Cal. 1988) ................................................................................21

*In re Am. Bank Note Holographics, Inc.*
127 F.Supp.2d 418 (S.D.N.Y. 2001) ..........................................................................19

*In re AT & T Mobility Wireless Data Services Sales Tax Litigation*
789 F.Supp.2d 935 (N.D. Ill. 2011) ............................................................................18

*In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*,
289 F.R.D. 526, 539 (N.D. Cal. 2012), aff'd, No. 17-17533, 2019 WL 4898684 (9th Cir. Oct. 4,
2019) ............................................................................................................................17

*In re Mego Fin. Corp. Sec. Litig.*
213 F.3d 454 (9th Cir. 2000) .....................................................................................14

*In re Syncor ERISA Litig.*
516 F.3d 1095 (9th Cir. 2008) ...................................................................................13

*Jones, et al. v. CertifiedSafety, Inc., et al.*,
Case No. 3:17-cv-02229-EMC, ECF 232 (N.D. Cal. June 1, 2020)........................9, 12

*Kilbourne v. Coca-Cola Co.*,
No. 14CV984-MMA BGS, 2015 WL 5117080 (S.D. Cal. July 29, 2015)...................17

*Langford v. Devitt*
127 F.R.D. 41 (S.D.N.Y. 1989) .................................................................................20

*Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690 (E.D. Cal. Sept. 11,
2008) ............................................................................................................................15

*Ma v. Covidien Holding, Inc.*
2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ...............................................................14

*Mandujano v. Basic Vegetable Products, Inc.*
  541 F.2d 832 (9th Cir. 1976) ................................................................................................ 19

*Monterrubio v. Best Buy Stores, L.P.*
  291 F.R.D. 443 (E.D. Cal. 2013) .......................................................................................... 15

*O'Connor v. Uber Techs., Inc.*
  No. 13-cv-03826-EMC, 2019 U.S. Dist. LEXIS 157070 (N.D. Cal. Sep. 13, 2019) ................... 12

*Officers for Justice v. Civil Serv. Comm'n*
  688 F.2d 615 (9th Cir. 1982) ......................................................................................... passim

*Romero v. Producers Dairy Foods, Inc.*
  235 F.R.D. 474 (E.D. Cal. 2006) .......................................................................................... 21

*Soto, et al. v. O.C. Communications, Inc., et al.*
  Case No. 3:17-cv-00251-VC, ECF 304-305 (N.D. Cal. Oct. 23, 2019) ........................... 9, 12, 13

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003) ................................................................................................ 12

*Stovall-Gusman v. W.W. Granger, Inc.*
  2015 WL 3776765 (N.D. Cal. June 17, 2015) ....................................................................... 14

*Thurman v. Bayshore Transit Mgmt., Inc.*,
  203 Cal.App.4th 1112 (Cal. App. Ct. 2012) ........................................................................... 6

*Torrisi v. Tucson Elec. Power Co.*
  8 F.3d 1370 (9th Cir. 1993) ................................................................................................. 20

*Viceral v. Mistras Grp., Inc.*
  No. 15-cv-02198-EMC, 2017 U.S. Dist. LEXIS 23220 (N.D. Cal. Feb. 17, 2017) .................... 13

*Viceral v. Mistras Grp., Inc.*,
  Case No. 15-cv-2198-EMC, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) (Chen, J.) ............... 14

*Wang v. Chinese Daily News, Inc.*
  737 F.3d 538 (9th Cir. 2013) ........................................................................................... 21, 23

*Wren v. RGIS Inventory Specialists*
  No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ................................... 13, 16

*Yokoyama v. Midland Nat. Life Ins. Co.*
  594 F.3d 1087 (9th Cir. 2010) .............................................................................................. 24

*York v. Starbucks Corp.*,
    No. CV 08-07919 GAF PJWX, 2011 WL 8199987 (C.D. Cal. Nov. 23, 2011) ..........................17

**STATUTES**

28 U.S.C. § 1715 ..................................................................................................................2

29 U.S.C. § 216 ....................................................................................................................6

29 U.S.C. § 255 ....................................................................................................................6

Cal. Lab. Code § 1194.2 ......................................................................................................6

Cal. Lab. Code § 203 ...........................................................................................................6

Cal. Lab. Code § 226 ...........................................................................................................6

Cal. Lab. Code § 2699 .........................................................................................................6

**TREATISES**

Fed.R.Civ.P. 23(a) .......................................................................................................12, 21

Fed.R.Civ.P. 23(e) .............................................................................................................11

**REGULATIONS**

Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action Settlement*
    § 21.61 (4th ed. 2004) ..................................................................................................12

## I.    INTRODUCTION

Plaintiffs achieved an excellent $4,250,000 class and collective action Settlement on behalf of Defendants' Sanitation Workers.[1] The Settlement is fully funded, notice has been disseminated, and the response of the Class Members is completely favorable. Plaintiffs now seek final approval to effectuate the Settlement and bring closure to three years of intensive litigation.

Plaintiffs pursued a hybrid Fair Labor Standards Act ("FLSA") and California law case alleging that the Sanitation Workers endured a pattern of wage and hour violations. These employees work long and difficult hours at meat processing plants throughout the United States, including numerous locations in California. The Settlement provides a strong recovery to resolve the claims of approximately 6,551 Class and Collective Members, thereby providing a favorable result for thousands of wage and hour claims unlikely to have been prosecuted as individual actions.[2]

The non-reversionary Gross Settlement Amount of $4,250,00 provides average recoveries of approximately $679.72 for each Rule 23 Settlement Class Member and approximately $291.22 for each Collective Member.[3] Longer-term Sanitation Workers will receive larger recoveries as the Settlement Awards are based on the number of workweeks—735 Class Members will receive awards over $1,000, 204 Class Members will receive awards over $2,000, and an impressive 12 Class Members will receive awards over $5,000. The largest individual award is $5,141.56 for the Class and $2,333.69 for the Collective.

---

[1] Defendants refers to Stellar Management Group VII, LLC ("SMGVII"; Stellar Management Group, Inc. d/b/a QSI Quality Service Integrity ("SMGINC"); and The Vincit Company, LLC d/b/a The Vincit Group and Vincit Enterprises ("Vincit") (collectively, "Defendants" or "QSI"). Settlement Class Members includes all possible Class and Collective Members covered by the Settlement (Settlement Agreement, ¶ 2.jj), and are referred to herein as "Sanitation Workers" or "Class Members" for ease of reference.

[2] The Settlement covers approximately 1,901 Rule 23 Settlement Class Members (i.e., California employees) and approximately 4,650 Collective Members (i.e., nationwide employees), for a total of approximately 6,551 unique Settlement Class Members. See Declaration of Carolyn Hunt Cottrell ("Cottrell Decl."), ¶ 9; Declaration of Scott M. Fenwick ("Fenwick Decl."), ¶ 4. Those Settlement Class Members who ultimately take part in the Settlement (by not opting out as to the Rule 23 component and/or by opting in to the FLSA component) are defined as "Participating Individuals" under the Settlement. Settlement Agreement, ¶ 2.z.

[3] The Settlements resolves California law claims for Rule 23 Class Members and FLSA claims for Collective Members that take part in the Settlement. The higher average recovery for the Rule 23 Settlement Class Members reflects the increased value of California Labor Code claims relative to the federal FLSA claims for the slate of violations alleged.

These robust recoveries resulted in an overwhelmingly positive response to the Settlement and confirms that the Settlement is fair, reasonable, and adequate in all respects. **No Class Members filed objections, no Class Members opted out of the Settlement, and no Class Members submitted disputes regarding their reported workweeks**.

Given the excellent benefits to the Class and Collective and the efficient outcome in the face of expanding litigation, the Court should grant final approval.

## II. RELEVANT BACKGROUND AND PROCEDURAL HISTORY

The procedural history of this action has been well documented in prior briefs, including in Plaintiffs' Motion for Preliminary Approval of Settlement and in Plaintiffs' Motion for Attorneys' Fees and Costs and For Service Awards. ECF 134, at pp. 1-6; ECF 155, at pp. 4-10. For purposes of this Motion, Plaintiffs break down the case chronologically to focus on the notice process.

### A. Notice of Settlement

The Court initially granted preliminary approval of the settlement on August 25, 2021. ECF 151. Following the Parties' joint briefing and amendment of the settlement, the Court issued an amended order preliminarily approving the Settlement on September 27, 2021. ECF 154. Pursuant to the amended order, the Court conditionally certified the FLSA Collective, granted preliminary approval of the Settlement as revised (ECF 134-2, 141-1 ("First Amendment"), 147-1 ("Second Amendment"), and 153-1 ("Third Amendment")), and approved the proposed procedure for notice dissemination. *Id*. Plaintiffs served the preliminary approval order, the original version of the Settlement Agreement and all amendments, and other relevant documents on the LWDA. Cottrell Decl., ¶ 13, Exhibit A. Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), Defendants served CAFA notice on the U.S. Attorney General and all applicable state Attorney Generals on April 14, 2021. *Id*., ¶ 14; *see also* Procedural Guidance for Class Action Settlements (updated Dec. 5, 2018).

Following the Court's preliminary approval order the Settlement Administrator, Kroll received the Class List from Defendants on October 4, 2021. Fenwick Decl. ¶ 4. The data contained the names, last known mailing addresses, last known personal email addresses (to the extent

available), workweeks, and other personal information for 6,551 unique Sanitation Workers.[4] Kroll sent Notices of Class Action Settlement and Notices of Collective Action Settlement (together, the "notices of settlement"), as applicable, via U.S. Mail to the 6,551 Sanitation Workers on October 19, 2021. *Id*., ¶ 8. Kroll also sent the notices of settlement via email to 5,974 email addresses that Defendants provided. *Id*., ¶ 9. Kroll established a case website, http://www.qsisettlement.com/, which provides Settlement documents and information and allows for the submission of electronic inquiries. *Id*., ¶ 5. Kroll also established a toll-free call center to field questions, address updates, and other inquiries from Class Members. *Id*., ¶ 6.

To include such information on the notices of settlement, Kroll first calculated the individual Settlement Awards for each Sanitation Worker using the workweek data provided by Defendants. *Id*., ¶¶ 4, 12. The notices informed the Class Members of: the Settlement terms; their expected share; the December 23, 2021 deadline to submit objections, requests for exclusions, or disputes; the March 18, 2022 final approval hearing; and that Plaintiffs would seek attorneys' fees, costs, and service awards and the corresponding amounts. *Id*., Exs. A-B; *see also* ECF 153-1. Kroll included the URL for the case website, the toll-free call center number, and the names and contact information for Class Counsel in the notices of settlement. *Id*.

As of February 4, 2022, 74 hard-copy notices were returned to Kroll with a forwarding address provided by USPS, all of which were remailed. *Id.,* ¶ 10. 1,046 hard-copy notices were returned to Kroll as undeliverable, without forwarding address. *Id*., ¶ 11. Kroll performed skip-tracing and other techniques to identify current addresses, and remailed 901 notices to updated addresses. *Id*. Following the re-mail, 8 notices have been returned by the USPS as undeliverable a second time. *Id*. Of the 5,974 emails sent by Kroll, approximately 2,713 were undeliverable. *Id*., ¶ 9. Kroll nevertheless effected electronic notice to a considerable portion of the Sanitation Workers.

The deadline for Class Members to opt-out, object, and dispute their reported workweeks

---

[4] At preliminary approval, the total number of Class and Collective Members was estimated to include approximately 5,923 Sanitation Workers, based on data compiled for September 2020 mediation. *See* ECF 134, 141. In the finalized Class List provided by the Defendants to the Settlement Administrator, which includes all Sanitation Workers through the end of the covered period (December 31, 2021), including new hires, the total number of Class Members is 1,901 and Collective Members is 4,650, for a total of 6,551. Cottrell Decl., ¶ 9; Fenwick Decl., ¶ 4.

expired on December 23, 2021. *Id.,* ¶ 13. To date, with the notice period complete, not a single objection has been filed and not a single Class Member has opted out of the Settlement. *Id.*, ¶¶ 14-16; Cottrell Decl., ¶ 11. Moreover, no Sanitation Workers have disputed the workweek figures reported in their notices. Following final approval of the Settlement, Kroll will issue checks to the Class Members under the Settlement.

### B. Final Approval of Settlement

The Final Approval Hearing is currently scheduled for March 18, 2022. Plaintiffs already filed their Motion for Attorneys' Fees and Costs and for Service Awards on November 18, 2021. ECF 155. Following an order by the Court on the pending motions, the Parties and the Settlement Administrator will execute the final steps of the settlement process, including sending individual checks to all Class Members for their Settlement Awards.

## III. TERMS OF THE SETTLEMENT

### A. Basic Terms and Value of the Settlement

Defendants have agreed to pay a non-reversionary Gross Settlement Amount of $4,250,000 to settle all aspects of this Action and the State Action. Settlement Agreement, ¶ 2.q. Defendants paid $4,250,000 into an interest-bearing Qualified Settlement Fund ("QSF") on September 7, 2021, following the Court's original order granting preliminary approval of the Settlement. ECF 155-1, ¶ 28; see also Fenwick Decl., ¶ 12. Pursuant to the Settlement, neither Party may remove any portion of the Gross Settlement Amount from the QSF. Settlement, ¶ 2.q. Once the Court issues an order granting final approval of the Settlement, the Settlement Administrator will distribute all funds from the QSF.

The Net Settlement Amount, which is the amount available to pay Settlement Awards to the Class Members, is defined as the Gross Settlement Amount less: the PAGA Settlement Amount to be paid to the LWDA ($22,500)[5]; any enhancement payments awarded to the Class Representatives

---

[5] The Parties agreed to allocate $30,000.00 of the Gross Settlement Amount to the settlement of the PAGA claims, which the Parties believe in good faith is a fair and reasonable apportionment. Settlement Agreement, ¶¶ 2.x, 29.c. The Settlement Administrator will pay 75%, or $22,500.00, of this amount to the LWDA, and will distribute 25%, or $7,500.00 (the "Net PAGA Amount") on a *pro rata* basis to Aggrieved Employees (as defined in the Settlement). Settlement, ¶¶ 2.b (Third Amendment, 153-1, ¶ 1), 29.c., 32.b. This *pro rata* distribution of the Net PAGA Amount to

4

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT
*Chavez v. Stellar Management Group VII, LLC, et al.*, Case No. 3:19-cv-01353-JCS

1    (up to $12,000 for Plaintiff Chavez and up to $10,000 for Plaintiff Slaughter); the Settlement

2    Administrator's fees and costs ($81,361); and any attorneys' fees and costs awarded to Plaintiff's

3    counsel (fees of up to one third of the Gross Settlement Amount, or approximately $1,416,666.67,

4    plus costs in the amount of $34,384.78). Settlement Agreement, ¶ 2.r; Cottrell Decl., ¶¶ 15-16.

5         The Gross Settlement Amount is a negotiated amount that resulted from substantial arm's-

6    length negotiations and significant investigation and analysis by Plaintiffs' counsel. ECF 155-1, ¶

7    30. Plaintiffs' counsel based their valuation of the claims and settlement negotiations on formal and

8    informal discovery (including the payroll and timekeeping data), depositions, and nearly 100

9    interviews with Sanitation Workers. *Id.*; ECF 141, at 1. Plaintiffs' counsel obtained average rates of

10   pay for Sanitation Workers, which were then used in conjunction with amounts of unpaid time to

11   determine estimated damages for off-the-clock and overtime violations. ECF 141, at 1-4.  Based on

12   interview analysis and cross-checked with Defendants' data, Plaintiffs applied a high-end damage

13   assumption of 15 minutes of off-the-clock time per day, along with each Sanitation Worker missing

14   80% of their meal and rest periods, and an average of $50 out-of-pocket expenses per Sanitation

15   Worker. *Id.* at 4.

16        Using these assumptions and further assuming that Plaintiffs certify the claims for all 6,551

17   Class and Collective Members and assuming Plaintiffs prevail at trial on all their claims, the total

18   potential substantive exposure is approximately $6.8 million and the total exposure (including

19   liquidated damages, derivative claims, and penalties) is $19.3 million if 50% of all Collective

20   Members opt in or $21 million if 100% of all Collective Members opt in.[6] ECF 155-1, ¶ 33; *see also*

21   *id.*, ¶ 30-31; ECF 141. The total amount of potential damages is broken down as follows:

22        • Plaintiffs calculated that unpaid wages owed, based on the assumption of 15 minutes of
23          off-the-clock work in each workday and inclusive of overtime and any applicable

---

24   Aggrieved Employees will be in addition to the amount that they receive as their individual share of
     the Net Settlement Amount.

25   [6] At preliminary approval, Plaintiffs' counsel assessed the total potential substantive exposure if
     Plaintiffs fully prevailed on all of their claims at approximately $5.5 million and the total exposure

26   (including liquidated damages, derivative claims, and penalties) at $16.6 million if 50% of all
     Collective Members opt in and at $19.7 million if 100% of all Collective Members opt in, based on

27   assumptions of 1,595 Class Members and 4,328 FLSA-only Collective Members. The figures
     presented here are based on the same methodology, applying the finalized tally of 1,901 Class

28   Members and 4,650 FLSA-only Collective Members.

liquidated damages, would total approximately $2.7 million (unliquidated) or $4.3 million (liquidated) for all Sanitation Workers. ECF 155-1, ¶ 32.

- California Class Members are able to recover for meal and rest break violations. Based on the assumption that 80% of their meal and rest periods are missed or otherwise non-compliant, Class Members would be owed approximately $4 million under the premium pay provisions of the California Labor Code, taking into account Section 203 premium pay hours paid by Defendants. *Id.*

- Class Members are also able to recover directly for unreimbursed business expenses under California Labor Code § 2802, which Plaintiff estimates at approximately $102,000. *Id.*

- Totaling the estimated damages for substantive (non-derivative) violations under California law and the FLSA, as applicable, for unpaid off-the-clock work, meal and rest period violations, and unreimbursed business expenses, Plaintiffs estimate that the total substantive damages are approximately $6.8 million. When liquidated damages are included, the total exposure for the substantive violations is $8.5 million. *Id.* This amount does not include derivative and penalty claims described below. *Id.*

- For derivative and penalty claims, Plaintiffs estimate the waiting time penalty claim for California Class Members under California Labor Code § 203 at approximately $4.8 million; the wage statement penalty under California Labor Code § 226 at approximately $3 million; and the PAGA penalties for applicable Sanitation Workers at approximately $4.7 million. *Id.* Totaling the estimated damages for derivative and penalty claims violations, Plaintiffs estimate that the total exposure for such claims are approximately $12.5 million. *Id.*

- Plaintiffs calculated the total potential exposure—inclusive of derivative claims, penalty claims,[7] claims for liquidated damages from willful or bad faith conduct,[8] and interest—at approximately $19.3 million assuming 50% of all Collective Members opt in and at approximately $21 million assuming 100% of all Collective Members opt in. *Id.*

The negotiated non-reversionary Gross Settlement Amount of $4,250,000 represents approximately 63% of the $6.8 million total that Plaintiffs calculated for unliquidated, core claims for unpaid wages, meal and rest breaks, and expense reimbursements. *Id.* The $4,250,000 represents 50% of the approximately $8.5 million that Plaintiffs calculated for the liquidated total of such core

---

[7] The damages figure includes Defendants' additional exposure to PAGA penalties. But note, because Labor Code §§ 1194.2, 203, and 226 already incorporate their own penalty provisions, an award of additional PAGA penalties – or an award of the maximum penalty amount provided by PAGA – is uncertain. *See* Cal. Lab. Code § 2699(f); *see also Guifi Li v. A Perfect Day Franchise Inc.*, 2012 WL 2236752 at *17 (N.D. Cal. 2012). Moreover, even assuming Plaintiffs' remaining claims qualify for PAGA penalties, any such award is not automatic. Cal. Lab. Code § 2699(e)(2); *see* also *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112, 1135-36 (Cal. App. Ct. 2012).

[8] This figure includes liquidated damages for unpaid overtime under the FLSA during a three-year statute of limitations period. 29 U.S.C. § 216(b) (liquidated damages for unpaid overtime is in an amount equal to the unpaid overtime); *Haro v. City of Los Angeles*, 745 F.3d 1249, 1259 (9th Cir. 2014). If an employer's conduct constitutes a "knowing violation" of the statute, the FLSA's standard two-year statute of limitations may be extended to three years. 29 U.S.C. § 255(a). Damages for unpaid overtime are not liquidated under California law.

claims. *Id.*

When adding derivative claims and potential penalties, the $4,250,000 settlement amount represents approximately 22% of Defendants' total potential exposure of $19.3 million assuming a 100% opt-in rate and approximately 20% assuming a 100% opt-in rate. *Id.* These figures are based on Plaintiffs' assessment of a best-case-scenario. To obtain such a result at trial, Plaintiffs would have to: (1) certify all claims and withstand any decertification motions; (2) prevail on the merits on all claims; (3) prove that Defendants acted knowingly or in bad faith; and (4) prove that all Sanitation Workers experienced the violations at the levels described above for every shift. *Id.*, ¶¶ 30-32.

Plaintiffs and their counsel considered the significant risks of continued litigation, described hereinafter, when considering the proposed Settlement. *Id.*, ¶ 33. These risks were front and center, particularly given the nature of the off-the-clock work and that the Sanitation Workers work in numerous and varying locations owned by various third-party entities, which could invariably complicate certification efforts and proving the claims on the merits. *Id.* In contrast, the Settlement will result in immediate and certain payment to Sanitation Workers of meaningful amounts. *Id.*

The average recovery is approximately $679.72 per Class Member and $291.22 per Collective Member.[9] Fenwick Decl., ¶ 12. This amount provides significant compensation to the Sanitation Workers, and the Settlement provides an excellent recovery in the face of highly uncertain litigation. This is particularly true here, in context of the high-end assumptions that Sanitation Workers worked off the clock 15 minutes per day with an 80% violation rate for meal and rest breaks, where Sanitation Workers worked on average short tenures of approximately 15.43 workweeks per class member and 25.6 workweeks per collective member. *See* ECF 155-1, ¶ 35. In light of all of the risks, the settlement amount is fair, reasonable, and adequate. Cottrell Decl., ¶ 19.

### B.    Class and Collective Definitions

An individual is eligible to share in the proposed Settlement if he or she belongs to either of

---

[9] This number differs from those preliminarily calculated for purposes of Plaintiffs' motion for attorneys' fees and costs and for service awards, as the latter assumed all employees worked identical lengths of employment. See ECF 155-1, ¶ 34.

7

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT
*Chavez v. Stellar Management Group VII, LLC, et al.*, Case No. 3:19-cv-01353-JCS

the following:[10]

- The **Rule 23 Settlement Class** means Plaintiffs and all individuals employed by Defendants in a Covered Position in the State of California at any time from March 13, 2015 through and including December 31, 2020.[11]

- The **FLSA Settlement Collective** means all individuals employed by Defendants in a Covered Position anywhere in the United States of America at any time from March 13, 2016 through and including December 31, 2020.[12] In turn, **Opt-In Plaintiffs** are Plaintiff Slaughter, all Collective Members that filed a consent form to join this Action prior to preliminary approval, and all additional Collective Members who opt in to the Action and consent to the terms of the Settlement by negotiating their Settlement Award check.[13]

For purposes of both definitions, Covered Position is defined to include each of Defendants' hourly, non-exempt employee positions, with the exception of administrative and office clerks and any positions in which the employee works or worked exclusively from Defendants' corporate offices. *See* Settlement, ¶ 2.ll (Second Amendment, ¶ 6).

## C. Allocation and Awards

The Net Settlement Amount to be paid to Sanitation Workers is approximately $2,673,258.86, including interest gained to-date on the Gross Settlement Amount.[14] Cottrell Decl., ¶ 16. Sanitation Workers will each receive a Settlement Award check without the need to submit a claim form.[15] The share for Sanitation Workers will be determined based on the total number of weeks that he or she was employed by Defendants in a Covered Position during the applicable limitations period(s). Settlement, ¶ 32.a.ii (Second Amendment, ¶ 11).

---

[10] The Parties agree that the Class and Collective are to be certified for settlement purposes. Settlement, ¶ 12.

[11] Settlement, ¶ 2.ee (Third Amendment, ¶ 5).

[12] Settlement, ¶ 2.p (Third Amendment, ¶ 3).

[13] Settlement, ¶ 2.t (First Amendment, ¶ 4). In the Collective Notice, Collective Members were informed that they may join the Collective as an Opt-In Plaintiff by cashing the Settlement Award check that they receive following final approval of the Settlement. *See* Fenwick Decl., Exs. A-B.

[14] This amount assumes that the Court approves the payments requested under the Settlement, including attorneys' fees in the amount of $1,416,666.67; attorneys' costs in the amount of $34,384.78; service awards in the amount of $12,000 and $10,000, respectively; and settlement administration costs of $81,361. As of February 4, 2022, the funds in the QSF have gained interest in the amount of $171.16. Fenwick Decl., ¶ 12.

[15] Rule 23 Class Members are not required to submit an Opt-In Form to receive payment under the Settlement for their work in California during the relevant time periods. However, for work in other states, Collective Members are required to opt in (i.e., by cashing their checks) as the damages for work in those states are attributable to FLSA claims only. Opt-In Plaintiffs may not opt out of the FLSA component of the Settlement. Settlement, ¶¶ 17, 24, Exs. A-B (Third Amendment, Exs. G-H); Fenwick Decl., Exs. A-B.

8

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT
*Chavez v. Stellar Management Group VII, LLC, et al.*, Case No. 3:19-cv-01353-JCS

Specifically, each Sanitation Worker will be credited for the number of weeks that he or she was employed by Defendants at any time (1) from March 13, 2015 through and including December 31, 2020 for Rule 23 Class Members (i.e., Sanitation Workers in California); and (2) from March 13, 2016 through and including December 31, 2020 for Collective Members (i.e., Sanitation Workers outside California). Settlement, ¶ 32.a.ii (Second Amendment, ¶ 11). Those Rule 23 Class Members that worked for Defendants in California at any time during the PAGA Period (from October 19, 2017 through and including December 31, 2020) will also receive a *pro rata* portion of the Net PAGA Amount, based on the number of workweeks they were employed by Defendants during the PAGA Period. *Id.*

Each workweek will be equal to one settlement share, but to reflect the increased value of state law claims and differing average rates of pay by state, workweeks during which the work was performed in California will be equal to three settlement shares while workweeks during which the work was performed in any state other than California will be equal to one settlement share.[16] Settlement, ¶ 32 (Third Amendment, ¶ 11). Additionally, to reflect the value of additional claims for former employees under the California Labor Code, Rule 23 Class Members whose employment terminated at any point during the period from March 13, 2016 through and including December 31, 2020 will each receive an additional 19 settlement shares. *Id.*; *see also* ECF 145, n. 3.

The total number of settlement shares (as weighted) for all Class and Collective Members will be added together and the Net Settlement Amount will be divided by that total to reach a per share dollar figure. Settlement, ¶ 32.a.iii. The resulting per share dollar figure will then be multiplied by each Participating Individual's number of settlement shares (as weighted) to determine his or her Settlement Award. *Id.* The Class and Collective Notices provided the estimated Settlement Award and number of workweeks for each Sanitation Worker, assuming full participation in the Settlement.

---

[16] Plaintiffs performed an in-depth analysis of Workweek weightings and the underlying state law provisions to develop the weightings. ECF 134-1, ¶ 50. Additionally, courts in this district recently granted final approval of a hybrid FLSA/Rule 23 wage and hour settlement that incorporated a workweek weighting of three for California state law claims and a workweek weighting of one for FLSA-only Workweeks. *See Jones, et al. v. CertifiedSafety, et al.,* 3:2017-cv-02229, ECF 232 (N.D. Cal. June 1, 2020) (Chen, J.); *Soto, et al. v. O.C. Communications, Inc., et al.,* Case No. 3:17-cv-00251-VC, ECF 299 at 10:11-14, 305 (N.D. Cal. Oct. 23, 2019) (Chhabria, J.).

Fenwick Decl., Exs. A-B. The Collective Notice will also notified potential Collective Members that they will be considered to have "opted-in" to this Action and to have agreed to the Settlement upon cashing their Settlement Award checks. *Id.,* Ex. B.

Settlement Awards will be paid to Sanitation Workers by the Settlement Administrator within 30 days after the occurrence of the "Effective Date." Settlement, ¶¶ 29.e, 40. Settlement Award checks will remain valid for 180 days from the date of their issuance. *Id.*, ¶ 41 (Second Amendment, ¶ 10). The Settlement Administrator will send reminder letters via U.S. Mail and if applicable, via email, to Sanitation Workers that have not cashed their checks at 90 days before the check-cashing deadline and will place a call to such individuals at 60 days before the check-cashing deadline. *Id*. Moreover, if a check has not been cashed within 60 days of issuance, the Settlement Administrator will perform a skip trace and send a second check – which will remain negotiable for 180 days from the date of issuance of the first check – to the updated address, or if no update is obtained, to the last known address. *Id*.

Any funds from checks that are returned as undeliverable or are not negotiated within 180 calendar days after issuance will either: (a) if less than $50,000.00, revert to the Parties' agreed-upon *cy pres* beneficiary, Legal Aid at Work, or (b); if $50,000.00 or greater, be redistributed to the Participating Individuals who negotiated their checks on a *pro rata* basis. Settlement, ¶ 42. Upon completion of administration of the Settlement, the Settlement Administrator will provide a Post-Distribution Accounting in accordance with the Northern District's Procedural Guidance. *See id*, ¶¶ 21.g, 42.c.

### D. Scope of Release

The releases contemplated by the proposed Settlement are dependent upon whether the Participating Individual is an Opt-In Plaintiff and/or a Rule 23 Class Member, and are tethered to the factual allegations in the pleadings. Opt-In Plaintiffs will release any and all claims, penalties, costs, expenses, attorneys' fees, liabilities, damages, actions or causes of action of whatever kind or nature under the FLSA, through and including December 31, 2020, known and unknown, which were or could have been made based on the facts pled in the Second Amended Complaint. *Id.*, ¶¶ 17.a (Third Amendment, ¶ 6), 17.d (First Amendment, ¶ 6).

Similarly, Rule 23 Class Members will release any and all claims, penalties, costs, expenses, attorneys' fees, liabilities, damages, actions or causes of action of every nature and description, known and unknown, that were pled or could have been pled based on the factual allegations in the Second Amended Complaint, through and including December 31, 2020, including, statutory, constitutional, contractual or common law claims for wages (including minimum wage, overtime, and premium wages), damages, business expenses, or penalties (including waiting time penalties), liquidated damages, punitive damages, interest, restitution, equitable relief, or other relief, based on applicable California statutes or other California law. *Id.*, ¶ 17.b (Third Amendment, ¶ 7), 17.d (Second Amendment, ¶ 6). As to Rule 23 Class Members who are not Opt-In Plaintiffs, those who negotiate their Rule 23 Settlement Checks will also release FLSA claims pursuant to the release specified above. *Id.*, ¶ 17.e (First Amendment, ¶ 7). Rule 23 Class Members who exclude themselves from the Settlement but are also part of the Collective will receive a Settlement Award in their capacity as a Collective Member. *Id.* If a Rule 23 Class Member does not deposit his or her check, he or she will not release any claims under the FLSA. *Id.* The Settlement further acknowledges that Aggrieved Employees have no right to opt out of the PAGA component of the Settlement and the Court's order regarding final approval of this Settlement will have *res judicata* and preclusive effect. *Id.*, ¶ 17.c (Second Amendment, ¶ 7).

The releases are effective upon the Effective Date of the Settlement. *Id.*, ¶ 17. The release timing extends through December 31, 2020, and the Released Parties are Defendants and their related persons and entities. *Id.*, ¶¶ 2.dd, 17 (Third Amendment, ¶¶ 6-7). The Class and Collective Representatives, Plaintiffs Chavez and Slaughter, also agree to a general release. *Id.*, ¶ 19.

## IV.   ARGUMENT

### A. Ninth Circuit Precedent Favors and Encourages Class Settlements

A certified class action may not be settled without Court approval. *See* Fed. R. Civ. P. 23(e). Approval of a class action settlement requires three steps: (1) preliminary approval of the proposed settlement upon a written motion; (2) dissemination of notice of the settlement to all class members; and (3) a final settlement approval hearing at which objecting class members may be heard, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT
*Chavez v. Stellar Management Group VII, LLC, et al.*, Case No. 3:19-cv-01353-JCS

settlement is presented. Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action Settlement*, § 21.61 (4th ed. 2004). The decision to approve or reject a proposed settlement is committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). Rule 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if it has not yet been certified; and (2) that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(a), (e)(2); *Hanlon*, 150 F.3d at 1020.

Federal law strongly favors and encourages settlements, especially in class actions. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[T]here is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits."). Moreover, when reviewing a motion for approval of a class settlement, the Court should give due regard to "what is otherwise a private consensual agreement negotiated between the parties," and must therefore limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The Court of Appeals will rarely overturn approval of a class action settlement unless "the terms of the agreement contain convincing indications that the incentives favoring pursuit of self-interest rather than the class's interests in fact influenced the outcome of the negotiations and that the district court was wrong in concluding otherwise." *Staton v. Boeing Co.,* 327 F.3d 938, 960 (9th Cir. 2003).

Applying this standard of review to other federal and California wage and hour class actions, this Court and others in this District have previously approved settlements similar to that reached in this case. *See Jones, et al. v. CertifiedSafety, et al.,* 3:2017-cv-02229, ECF 232 (N.D. Cal. June 1, 2020) (final approval of a settlement that included both FLSA and California Labor Code claims, with workweek weighting); *Soto, et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC, ECF 299 at 10:11-14, 305 (N.D. Cal. Oct. 23, 2019) (same); *O'Connor v. Uber Techs., Inc.*, No. 13-cv-03826-EMC, 2019 U.S. Dist. LEXIS 157070, at *12 (N.D. Cal. Sep. 13, 2019) (final

approval of a settlement that included both FLSA and California Labor Code claims); *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2017 U.S. Dist. LEXIS 23220, at *2 (N.D. Cal. Feb. 17, 2017) (same); *Guilbaud v. Sprint Nextel Corp.*, No. 3:13-CV-04357-VC, 2016 WL 7826649, at *1 (N.D. Cal. Apr. 15, 2016). Likewise, in its September 27, 2021 order, this Court conditionally certified the California Class and preliminarily approved the Settlement with respect to these Class Members, and approved the Settlement with respect the Collective Members. *See* ECF 154.[17] *Id.* Accordingly, the only step that remains is final approval. Consistent with the precedent of this Circuit and this Court's own decisions, the Settlement should be finally approved.

## B. The Settlement Should be Finally Approved Because it is Fair, Reasonable, and Adequate

In deciding whether to approve a proposed class action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354-55 (11th Cir. 1982). Included in this analysis are considerations of: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026). Importantly, courts apply a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In light of these factors, the proposed settlement is fair, reasonable, and adequate

---

[17] Plaintiffs acknowledge that, in the event that the Settlement is not approved by the Court, class and collective certification would be contested by Defendants, and Defendants fully reserve and do not waive any arguments and challenges regarding the propriety of class and collective action certification. Settlement, ¶ 12.

and the Court should grant final approval.

### 1. The Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay and Burden of Further Litigation.

In evaluating the fairness of a proposed settlement, courts compare the settlement amount with the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir.2000). Courts routinely approve settlements that provide a fraction of the maximum potential recovery. *See, e.g.*, *Officers for Justice,* 688 F.2d at 623; *Viceral v. Mistras Grp., Inc.*, Case No. 15-cv-2198-EMC, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016) (Chen, J.) (approving wage and hour settlement which represented 8.1% of the total verdict value).[18] A review of the Settlement Agreement reveals the fairness, reasonableness, and adequacy of its terms. Cottrell Decl., ¶¶ 19, 20. The Gross Settlement Amount of $4,250,000 represents approximately 63% of the $6.8 million total that Plaintiffs calculated for unliquidated, core claims for unpaid wages, meal and rest breaks, and expense reimbursement damages that would have been owed to all Sanitation Workers if each had been able to prove that he or she worked 15 minutes off-the-clock in every workday, along with the other violation levels discussed *supra*, during the relevant time period. ECF 155-1, ¶ 33; *see also id.*, ¶ 30-31; ECF 141. The $4,250,000 represents approximately 20% of the approximate $21 million that Plaintiffs calculated in total damages that would have been owed to all Sanitation Workers, inclusive of all liquidated damages and derivative penalties, and assuming all Collective Members opt-in to the Settlement. ECF 155-1, ¶ 33.

The Settlement provides robust average recoveries of approximately $679.72 for each Rule 23 Settlement Class Member and approximately $291.22 for each Collective Member. Fenwick Decl., ¶ 12. Approximately 735 Class Members will receive awards over $1,000, 204 Class Members will receive awards over $2,000, and an impressive 12 Class Members will receive awards over $5,000. *Id*. The largest individual award is $5,141.56 for the Class and $2,333.69 for the

---

[18] *See also Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) ("10% gross and 7.3% net figures are 'within the range of reasonableness'"); *Balderas v. Massage Envy Franchising, LLP,* 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (gross settlement amount of 8% of maximum recovery and net settlement amount of 5%); *Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at *4-5 (C.D. Cal. Jan. 31, 2014) (9.1% of "the total value of the action" is within the range of reasonableness).

Collective. *Id*. These results are well within the reasonable standard when considering the difficulty and risks presented by pursuing further litigation. *Id*. This is particularly true because of the Sanitation Workers' relatively short tenures – which, based on Defendants' provided data, are approximately 15.43 workweeks per class member and 25.6 workweeks per collective member, on average – during their employment. ECF 155-1, ¶ 35. The final settlement amount takes into account the substantial risks inherent in any class action wage-and hour case, as well as the procedural posture of the Action and the specific defenses asserted by Defendants, many of which are unique to this case. Cottrell Decl., ¶¶ 17, 19; *see Officers for Justice*, 688 F.2d at 623.

### 2. The Settlement Was Reached Only After the Parties Engaged in Substantial Investigation and Analysis of the Legal Issues.

The amount of discovery completed prior to reaching a settlement is important because it bears on whether the Parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g.*, *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 617, 625 (N.D. Cal. 1979); *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008). Informal discovery may also assist parties with "form[ing] a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

The Parties engaged in extensive formal and informal discovery, including multiple depositions, and class interviews that have enabled Plaintiffs to assess the claims and potential defenses in this action. ECF 134-1, ¶ 80. Plaintiffs were able to accurately assess the legal and factual issues that would arise if the cases proceeded to trial(s). *Id*. In addition, in reaching this Settlement, Plaintiffs' counsel relied on their substantial litigation experience in similar wage and hour class and collective actions. *Id*. Plaintiffs' counsel's liability and damages evaluation was premised on a careful and extensive analysis of the effects of Defendants' compensation policies and practices on Class Members' pay. *Id*. Ultimately, facilitated by mediator Mark S. Rudy, the Parties used this information and discovery to fairly resolve the litigation. *See id*.

### 3. The Settlement is the Product of Informed, Non-collusive, and Arm's-length Negotiations Between Experienced Counsel.

Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining. *See Hanlon*, 150 F.3d at 1027; *Wren*, 2011 WL 1230826, at *14. Furthermore, where counsel are well-qualified to represent the proposed class and collective in a settlement based on their extensive class and collective action experience and familiarity with the strengths and weaknesses of the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL 1230826, at *10; *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP OPX, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.").

Here, the settlement was a product of non-collusive, arm's-length negotiations. Cottrell Decl., ¶ 4, ; ECF 134-1, ¶ 86. The Parties participated in mediation before Mark S. Rudy, who is a skilled mediator with many years of experience mediating employment matters. *Id.* The Parties then spent several months negotiating the memorandum of understanding and long-form Settlement Agreement, with several rounds of meet and confer and correspondence related to the terms and details of the Settlement. *Id.*, ¶¶ 27-28, 86; ECF 155-1, ¶¶ 18-25. Plaintiffs are represented by experienced and respected litigators of representative wage and hour actions, and these attorneys feel strongly that the proposed Settlement achieves an excellent result for the Class Members. Cottrell Decl., ¶¶ 5-7, 17; ECF 134-1, ¶ 87; ECF 155-1, ¶ 35.

### 4. Further Litigation Would Involve Risk, Expense, Delay, and Burden on Class Members.

"Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class." *Eddings v. Health Net, Inc.*, No. CV 10-1744-JST RZX, 2013 WL 3013867, at *3 (C.D. Cal. June 13, 2013). The monetary value of the proposed Settlement represents a fair compromise given the risks and uncertainties posed by continued litigation. ECF 134-1, ¶ 81. If this Action were to go to trial as a class, representative, and collective action (which Defendants would vigorously oppose if this Settlement Agreement were not approved), Class Counsel estimates that fees and costs would exceed $5,000,000.00. *Id.* Litigating the class, representative, and collective action claims would require substantial additional preparation and discovery. *Id.* It would require depositions of experts, the presentation of percipient and expert witnesses at trial, as well as the consideration, preparation, and

presentation of voluminous documentary evidence and the preparation and analysis of expert reports. *Id.*

Recovery of the damages and penalties previously referenced would also require complete success and certification of all of Plaintiffs' claims, a questionable feat in light of developments in wage and hour and class and collective action law as well as the legal and factual grounds that Defendants have asserted to defend this action. *Id.,* ¶ 82. Off-the-clock claims are difficult to certify for class treatment, given that the nature, cause, and amount of the off-the-clock work may vary based on the individualized circumstances of the worker. *See, e.g., In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*, 289 F.R.D. 526, 539 (N.D. Cal. 2012), aff'd, No. 17-17533, 2019 WL 4898684 (9th Cir. Oct. 4, 2019); *Kilbourne v. Coca-Cola Co.*, No. 14CV984-MMA BGS, 2015 WL 5117080, at *14 (S.D. Cal. July 29, 2015); *York v. Starbucks Corp.*, No. CV 08-07919 GAF PJWX, 2011 WL 8199987, at *30 (C.D. Cal. Nov. 23, 2011). While Plaintiffs are confident that they would establish that common policies and practices give rise to the off-the-clock work for Sanitation Workers, Plaintiffs acknowledged that the work was performed by hourly employees holding various job titles at dozens of different locations around the country, which were operated by numerous different processing companies. ECF 134-1, ¶ 82.

With differing facilities' policies and practices, the physical layout, and the nature of the work varying by location, Plaintiffs recognized that obtaining class certification would present a significant obstacle, with the risk that the Sanitation Workers could only pursue individual actions in the event that certification was denied. *Id.* Certification of off-the-clock work claims is complicated by the lack of documentary evidence and reliance on employee testimony, and Plaintiffs would likely face motions for decertification as the case progressed. *Id.* Plaintiffs also recognized similar obstacles may hinder class certification of Plaintiffs' class claims regarding Sanitation Workers' meal and rest breaks. *Id.* Given that the substantive damages are largely driven by the alleged off-the-clock work and meal and rest breaks, and that the derivative and penalty claims are tethered to off-the-clock claims, Plaintiffs' counsel was required to significantly discount the hypothetical value of the claims when assessing the mediator's proposal for Settlement. *Id.*

Plaintiffs would also encounter difficulties in moving for certification and proving their

claims on the merits in part due to the fact that key Class Member timekeeping documents were kept in paper format. *Id.*, ¶ 83. For example, Class Member timesheets that tracked the time Class Members arrived and left their shifts were largely written by hand. *Id.* Plaintiffs would face fundamental logistical difficulties in reviewing and analyzing the massive amounts of hard copy records. *Id.*

In contrast to litigating this suit, resolving this case by means of the Settlement will yield a prompt, certain, and very substantial recovery for the Class Members. *Id.*, ¶ 84. Such a result will benefit the Parties and the court system. *Id.* It will bring finality to over two years of arduous litigation and will foreclose the possibility of expanding litigation.

### 5. The Distribution of the Settlement Proceeds is Equitable and Tailored to the Respective Claims of the Class and Collective.

In an effort to ensure fairness, the Parties have agreed to allocate the settlement proceeds amongst Class Members in a manner that recognizes that amount of time that the particular Sanitation Worker was employed by Defendants in the applicable limitations period. The allocation method, which is based on the number of workweeks, will ensure that longer-tenured workers receive a greater recovery. Moreover, the allocation tracks the differences in substantive law and penalty claims by weighting the workweek shares more heavily for work performed in California. ECF 134-1, ¶ 78. The allocation was made based on Class Counsel's assessment to ensure that employees are compensated accordingly and in the most equitable manner. *Id.* To the extent that any Class Member is *both* a FLSA Opt-In Plaintiff and a member of a Rule 23 Class, these workers will only receive a recovery based on their workweeks as a Rule 23 Class Member for their work in California. *Id.* Such workers will not receive a "double recovery." *Id.*, ¶ 79.

A class action settlement need not benefit all class members equally. *Holmes v. Continental Can Co.,* 706 F.2d 1144, 1148 (11th Cir. 1983); *In re AT & T Mobility Wireless Data Services Sales Tax Litigation,* 789 F.Supp.2d 935, 979–80, 2011 WL 2204584 at *42 (N.D. Ill. 2011). Rather, although disparities in the treatment of class and collective members may raise an inference of unfairness and/or inadequate representation, this inference can be rebutted by showing that the unequal allocations are based on legitimate considerations. *Holmes,* 706 F.2d at 1148; *In re AT & T,*

789 F.Supp.2d at 979–80, 2011 WL 2204584, at *42. Plaintiffs provide rational and legitimate bases for the allocation method here, and the Parties submit that it should be approved by the Court.

### 6. Class Members Approve of the Settlement.

The Ninth Circuit and other federal courts have made clear that the number or percentage of class members who object to or opt out of the settlement is a factor of great significance. *See Mandujano*, 541 F.2d at 837; *see also In re Am. Bank Note Holographics, Inc.*, 127 F.Supp.2d 418, 425 (S.D.N.Y. 2001) ("It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."). Courts have found that a relatively low percentage of objectors or opt outs is a very strong sign of fairness that factors heavily in favor of approval. *See, e.g., Cody v. Hillard*, 88 F.Supp.2d 1049, 1059-60 (D.S.D. 2000) (approving the settlement in large part because only 3% of the apparent class had objected to the settlement).

To date, no Class Members have objected to the Settlement, and no Class Members have opted out of the Settlement. *See* Cottrell Decl. ¶ 11. In addition, both Class Representatives support the terms of the Settlement. *Id.*; *see also* ECF 155-2, 155-3 (Declarations of Plaintiffs in Support of Service Awards). This shows widespread support for the Settlement among Class Members, and gives rise to a presumption of fairness.

### C. The Best Practicable Notice Was Provided To The Class Members In Accordance With The Process Approved By The Court.

Pursuant to the Court's September 27, 2021 preliminary approval order, Kroll sent the Court-approved notices of settlement to the Class Members in accordance with the terms of the Settlement. Cottrell Decl., ¶ 14; Fenwick Decl., ¶¶ 3-12. The Notices were sent via U.S. Mail and email, and the Parties created a case website where Class Members can view the Settlement and accompanying court filings. Fenwick Decl., ¶¶ 5, 8-9.

Notice of a class action settlement is adequate where the notice is given in a "form and manner that does not systematically leave an identifiable group without notice." *Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832, 835 (9th Cir. 1976). The notice should be the best "practicable under the circumstances including individual notice to all members who can be

identified through reasonable effort." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993). Sending individual notices to settlement class members' last-known addresses constitutes the requisite effort. *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975); *Langford v. Devitt*, 127 F.R.D. 41, 45 (S.D.N.Y. 1989) ("[N]otice mailed by first class mail has been approved repeatedly as sufficient notice of a proposed settlement.").

The Settlement Administrator followed all of the procedures set forth in the Court-approved notice plan. Reasonable steps have been taken to ensure that all Class Members receive the Notice. *See supra* Section II.A. Ultimately, of the 6,551 notices distributed via U.S. Mail, approximately 153 notices (i.e., 2.34%) were undeliverable following skip-tracing and other techniques. Fenwick Decl., ¶¶ 8, 10-11. Moreover, the dissemination of notice via email in addition to U.S. Mail increased the likelihood that Class Members successfully received the notice. *Id.*, ¶ 9. The Notices provided reasonable estimates of Class Members' recovery. With these measures, the notice process satisfies the "best practicable notice" standard.

### D. The Class Representative Enhancement Payments and Attorneys' Fees and Costs Are Reasonable

In approving the Settlement, the Court must determine whether "the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. In addition to the terms and details of the Settlement discussed above, the Settlement also provides for enhancement payments of up to $12,000 for Plaintiff Chavez and $10,000 for Plaintiff Slaughter, as well as attorneys' fees of up to $1,416,666.52 plus reimbursement of attorneys' costs of $34,384.78.

Plaintiffs set forth their arguments in support of the enhancement payments and the fee and costs request in full in their Motion for Attorneys' Fees and Costs and for Service Awards. ECF 155. Plaintiffs do not repeat those arguments here, but note that Class Counsel's lodestar has increased to $1,329,345, based on 2,063 total hours of attorney and staff time, decreasing the estimated multiplier from 1.097 to 1.065 as a result of preparing the final approval papers and continued oversight of the settlement administration process. Cottrell Decl., ¶ 29. As explained in Plaintiffs' fee motion, the Court should grant final approval to the requested enhancement payments and fees and costs as reasonable.

**E. The Court Should Finally Certify the Class**

In its September 27, 2021 preliminary approval order, the Court granted conditional certification of the provisional California Class. ECF 154.[19] Now that notice has been effectuated, the Court should finally certify this Class in its Final Approval Order. The Class meets all of the requirements for final approval as set forth below.

**1. The Class is Numerous and Ascertainable.**

The numerosity prerequisite demands that a class be large enough that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). While there is no exact numerical cut-off, courts have routinely found numerosity satisfied with classes of at least forty members. *See, e.g., Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006). The approximately 1,901 members of the California Class render the class so large as to make joinder impracticable. Fenwick Decl., ¶ 4; Cottrell Decl., ¶ 21; ECF 155-1, ¶ 32.

**2. Plaintiffs' Claims Raise Common Issues of Fact or Law.**

The commonality requirement of Rule 23(a)(2) "is met if there is at least one common question or law or fact." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D. Pa. 2000). Rule 23(a)(2) has been construed permissively. *Hanlon*, 150 F.3d at 1019. Plaintiffs "need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). "[E]ven a single common question" can satisfy the commonality requirement of Rule 23(a)(2). *Id.*

Common questions of law and fact predominate here, satisfying paragraphs (a)(2) and (b)(3) of Rule 23, as alleged in the operative complaints. ECF 134-1, ¶ 67; Cottrell Decl., ¶ 22. Defendants have uniform policies applicable to all Sanitation Workers. Cottrell Decl., ¶ 22. Specifically, Plaintiffs allege that Sanitation Workers all perform essentially the same job duties—performing

---

[19] With regards to the Collective, this Court has already granted "[a]pproval of the terms and conditions contained in the Amended Settlement as to the Collective of Opt In Plaintiffs" and conditionally certified the Collective. ECF 154, ¶¶ 4, 6. Accordingly, the only step that remains is final approval of the Settlement as to the California Class. Consistent with the precedent of this Circuit and this Court's own decisions, the Settlement should be finally approved.

21

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT
*Chavez v. Stellar Management Group VII, LLC, et al.*, Case No. 3:19-cv-01353-JCS

sanitation duties pursuant to Defendants' standards and requirements. *Id.*[20] Plaintiffs allege that the wage and hour violations are in large measure borne of Defendants' standardized policies, practices, and procedures, creating pervasive issues of fact and law that are amenable to resolution on a class-wide basis. In particular, Plaintiffs allege that Sanitation Workers are subject to the same: hiring and training process; timekeeping, payroll, and compensation policies and systems; meal and rest period policies and practices; and reimbursement policies. *Id.* These allegations are tied to common questions of law or fact as to whether, *inter alia*, Sanitation Workers were required to – and should be paid for – unrecorded off the clock work, including time spent donning and doffing personal protective equipment; whether such donning and doffing time spent during meal and rest breaks were required and renders such breaks on-duty, untimely, or cut short; and whether Sanitation Workers were required to purchase items for work and should be reimbursed for such purchases. *Id.* Plaintiffs' other derivative claims will rise or fall with the primary claims. *Id.* Because these questions can be resolved at the same juncture, Plaintiffs contend the commonality requirement is satisfied for the Class. *Id.*

### 3. Plaintiff's Claims are Typical of the Claims of the Class.

"Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the members of the class." *Fry*, 198 F.R.D. at 468. "Under the rule's permissive standards, a representative's claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, Plaintiffs' claims are typical of those of all other Class Members. ECF 134-1, ¶ 68; Cottrell Decl., ¶ 23. They were subject to the alleged illegal policies and practices that form the basis of the claims asserted in this case. Cottrell Decl., ¶ 23. Interviews with Class Members and review of timekeeping and payroll data confirm to Plaintiffs that the employees throughout California and the United States were subjected to the same alleged illegal policies and practices to which Plaintiffs were subjected. *Id.*

---

[20] These employees reported a variety of common job duties, including donning and doffing protective equipment, convening for safety meetings at the start of each shift, cleaning off and sanitizing poultry equipment, preparing and spraying liquid chemicals, performing regular maintenance on sanitation equipment, preparing the facility for audits by federal and state agencies, practicing food safety procedures, and ultimately protecting the brand image of meat processing companies. Cottrell Decl., ¶ 22, n.5.

Indeed, interviews with Class Members confirm that, like Plaintiff, Class Members were subjected to similar rates of violations as to off-the-clock work, particularly as to unpaid donning and doffing time, missed or otherwise non-compliant meal and rest breaks, and unreimbursed business expenses. *Id.* Thus, the typicality requirement is also satisfied. *See Id.*

### 4. Plaintiffs and Class Counsel will Adequately Represent the Class.

To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiffs must show "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously; (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469. Plaintiffs' claims are in line with the claims of the Class, and Plaintiffs' claims are not antagonistic to the claims of Class Members. ECF 134-1, ¶ 69; Cottrell Decl., ¶ 24. Plaintiffs have prosecuted this case with the interests of the Class Members in mind. Cottrell Decl., ¶ 24. Moreover, Class Counsel has extensive experience in class action and employment litigation, including wage and hour class actions, and do not have any conflict with the Class. ECF 134-1, ¶¶ 5-7, 69.

### 5. The Rule 23(b)(3) Requirements for Class Certification are also Met.

Under Rule 23(b)(3), Plaintiffs must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." "The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang,* 737 F.3d at 545.

Here, Plaintiffs contend the common questions raised in this action predominate over any individualized questions concerning the California Class. ECF 134-1, ¶ 70; Cottrell Decl., ¶ 25. The Class is entirely cohesive because resolution of Plaintiffs' claims hinge on the uniform policies and practices of Defendants, rather than the treatment the Class Members experienced on an individual level. Cottrell Decl., ¶ 25. As a result, the resolution of these alleged class claims would be achieved through the use of common forms of proof, such as Defendants' uniform policies, and would not

require inquiries specific to individual class members.[21] *Id.*

Further, Plaintiffs contend the class action mechanism is a superior method of adjudication compared to a multitude of individual suits. Cottrell Decl., ¶ 26 To determine whether the class approach is superior, courts are to consider: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, the Class Members do not have a strong interest in controlling their individual claims. ECF 134-1, ¶ 71; Cottrell Decl., ¶ 26. The action involves thousands of workers with very similar, but relatively small, claims for monetary injury. Cottrell Decl., ¶ 26. If the Class Members proceeded on their claims as individuals, their many individual suits would require duplicative discovery and duplicative litigation, and each Class Member would have to personally participate in the litigation effort to an extent that would never be required in a class proceeding. *Id.* Thus, the class action mechanism would efficiently resolve numerous substantially identical claims at the same time while avoiding a waste of judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation and arbitrations. *Id.*

The issues raised by the present case are much better handled collectively by way of a settlement. *Id.*, ¶ 26. Manageability is not a concern in the settlement context. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 593 (1997). The Settlement presented by the Parties provides finality, ensures that workers receive redress for their relatively modest claims, and avoids clogging the legal system with numerous cases. ECF 134-1, ¶ 72. Accordingly, class treatment is efficient and warranted, and the Court should certify the California Class for settlement purposes. *Id.*; Cottrell Decl., ¶¶ 26-27.

---

[21] Although the amount of time worked off-the-clock and number of missed meal and rest periods may vary, these are damages questions and should not impact class certification. *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010). The fact that individual inquiry might be necessary to determine whether individual employees were able to take breaks despite the Defendants' allegedly unlawful policy is not a proper basis for denying certification. *Benton v. Telecom Network Specialists, Inc.*, 220 Cal.App.4th 701 (Cal. Ct. App. 2014).

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT
*Chavez v. Stellar Management Group VII, LLC, et al.*, Case No. 3:19-cv-01353-JCS

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant final approval of the Settlement Agreement and order the Parties and the Settlement Administrator to effectuate the Settlement in accordance with its terms and the schedule set forth herein.

Date: February 11, 2022

Respectfully Submitted,

*/s/ Carolyn H. Cottrell*
Carolyn H. Cottrell
Ori Edelstein
Michelle S. Lim
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile:  (415) 421-7105

Attorneys for Plaintiffs and the Settlement Class
and Collective

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I electronically filed the foregoing document(s) with the Clerk of the Court for the United States District Court, Northern District of California, by using the Court's CM/ECF system on February 11, 2022.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Court's CM/ECF system.

/s/ *Carolyn H. Cottrell*
Carolyn H. Cottrell
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
ccottrell@schneiderwallace.com

*Attorneys for Plaintiffs and the Settlement Class and Collective*